No. 57,946

ROSIE KATHLEEN GOULD, *Appellee,* v. TACO BELL, *Appellant.*

(722 P.2d 511)

Opinion filed July 18, 1986.

*Bryan E. Nelson,* of Alder & Nelson, of Overland Park, argued the cause and *Ronald W. Nelson,* of the same firm, was with him on the briefs for appellant.

*Dana M. Harris,* of Overland Park, argued the cause and *John D. Tongier,* of Shawnee, was with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal from a jury verdict in a civil case finding appellant, Taco Bell, 51% at fault for injuries received by appellee, Rosie Gould. Gould was injured in a Taco Bell restaurant as a result of an assault by another patron. The altercation occurred as follows.

On the evening of July 13, 1983, Rosie Gould and her friend, Theresa Holmberg, attended a Kansas City Royals baseball game. They left the ballgame about 9:30 or 10:00 p.m. and on the way home, stopped at a local bar. After about half an hour, they left the bar and drove to a Taco Bell restaurant located at 10321 West 75th Street in Shawnee, Kansas. They arrived at the restaurant at approximately 11:30 p.m. There were six people in the restaurant, two at the counter and the rest seated in a booth. Later, all six sat together in the booth. After ordering their food, Gould and Holmberg sat down in a booth across from the group. Karen Brown was one of the individuals in that group.

Brown and her companions began engaging in loud, crude and vulgar conversation, designed to be overheard and to shock Gould and Holmberg. Neither Gould nor Holmberg made any comment to Brown or her companions during this conversation. At one point, a Taco Bell employee told the group to quiet down, but the conversation grew louder.

Eventually, the group got up to leave but prior to reaching the

exit, Brown stopped and said, "Those two white bitches over there think they're hot shit." Gould was shocked and asked, "Are you talking to us?" When Brown responded, "Yes," Gould requested her to "please come over here and repeat yourself."

Brown responded by suddenly dashing to Gould's booth and striking her in the face with a clenched fist, knocking her sideways and bruising her face and nose. Gould, shocked, called Brown a "nigger." Brown then began hitting Gould with her fists with renewed effort. This beating continued for about thirty seconds until Holmberg intervened by moving between Gould and Brown. She told Brown, "We don't want any trouble." Gould and Holmberg began moving toward the door but Brown kept saying "Come on, hit me, bitch. Come on, I want to fight." Gould and Holmberg continued to insist they did not want to fight, but when they reached the door of the restaurant Brown began beating on Gould again. She struck Gould four or five times before they moved outside the restaurant.

During this second exchange, Mark Wills, the assistant manager at the restaurant, watched the altercation as he came out from behind the counter. Wills did not try to stop Brown because he did not want to get involved and for fear Brown would strike him for interfering. Nor did he call the police, since he didn't feel the situation warranted such action. However, Wills did tell Brown, "Why don't you just leave? You did this two weeks before in here."

Gould and Holmberg, attempting to escape further trouble, began moving toward their car in the parking lot. Mark Wills and another Taco Bell employee followed the group outside. While in the parking lot, Brown attacked Holmberg, shoving her against the brick wall of the restaurant and hitting and kicking her. Holmberg screamed for someone to call the police. The Taco Bell employees did not respond. Holmberg was finally able to break away and ran inside to the food counter and asked Wills (who had followed her back inside) if she could use the phone to call the police. Wills advised her the phone was not for public use. Holmberg threatened to jump over the counter and use the phone. Wills finally reluctantly called the police.

While Holmberg was inside, Brown again attacked Gould, striking her three or four times on the upper part of her body. When Holmberg returned to the parking lot, she informed

Brown the police were on the way. This scared Brown and her companions and they got in their car and left.

Gould filed the present action against Taco Bell, alleging Taco Bell failed to provide security measures sufficient to protect Gould, a business invitee, from injuries inflicted by fellow invitees. She further alleged that Taco Bell, through its employees, could have prevented the conduct of Karen Brown, thereby preventing the injuries suffered by Gould.

The jury found Gould 49% at fault and Taco Bell 51% at fault. They awarded Gould $500 in actual damages and $10,000 in punitive damages. Taco Bell appeals the jury's findings.

Appellant first argues a premises owner cannot be held liable for injuries sustained in a sudden attack upon one patron by another.

The duty of care owed by a premises owner to an entrant upon the land is dependent upon the status of the person entering the premises. A restaurant patron is an "invitee." We defined that term and discussed the duty of care owed to an invitee in *Gerchberg v. Loney,* 223 Kan. 446, 449, 576 P.2d 593 (1978):

"An invitee is one who enters or remains on the premises of another at the express or implied invitation of the possessor of the premises for the benefit of the inviter, or for the mutual benefit and advantage of both inviter and invitee. The possessor of premises on which an invitee enters owes a higher degree of care, that of reasonable or ordinary care for the invitee's safety. This duty is active and positive. It includes a duty to protect and warn an invitee against any danger that may be reasonably anticipated."

Thus, Taco Bell owed Rosie Gould an affirmative duty to exercise reasonable or ordinary care for her safety. This duty included an obligation to warn her against any danger that might reasonably have been anticipated.

In *Kimple v. Foster,* 205 Kan. 415, 469 P.2d 281 (1970), we discussed the liability of a business owner for an intentional, harmful assault upon a patron by another patron and set forth the general rule as follows:

"A proprietor of an inn, tavern, restaurant or like business is liable for an assault upon a guest or patron by another guest or third party where the proprietor has reason to anticipate such an assault and fails to exercise reasonable care to forestall or prevent the same." Syl. ¶ 2.

"The duty of a proprietor of a tavern or inn to protect his patrons from injury does not arise until the impending danger becomes apparent to him, or the circumstances are such that a careful and prudent person would be put on notice of the potential danger." Syl. ¶ 3.

This rule is consistent with that set forth in Restatement (Second) of Torts § 344 (1963):

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

"(a) discover that such acts are being done or are likely to be done, or

"(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

For an excellent annotation on the liability of an innkeeper, restaurateur, or tavern keeper for injury occurring on the premises to a guest or patron by a third person, see Annot., 70 A.L.R. 2d 628, §§ 13, 14. See also 40 Am. Jur. 2d, Hotels, Motels, Etc. § 112, p. 987.

Appellant compares the facts of the present case to those in *Kimple v. Foster*, 205 Kan. 415, and argues our holding in *Kimple* is inapplicable to the facts of this case.

In *Kimple*, the plaintiffs were injured while guests at a bar owned by the defendant. The plaintiffs were the victims of an unprovoked attack by another group of patrons who had been drinking, harassing patrons, and brawling in the bar for several hours. A jury found the tavern owner liable for injuries sustained by the plaintiffs. On appeal, the tavern owner argued that a proprietor's duty to protect his patrons does not arise until the impending danger becomes apparent to the tavern keeper, or the circumstances are such that an alert and prudent person would be placed on notice of the probability of danger. 205 Kan. at 417.

The *Kimple* court concluded the facts present were clearly sufficient to warrant the jury in concluding that the defendant had knowledge of facts which should reasonably have placed him on notice that trouble might be expected which would endanger the safety of the patrons. 205 Kan. at 418. Specifically, the court noted there was evidence to the effect that, before the physical attack commenced, the plaintiffs and other patrons repeatedly told tavern employees to call the police but to no avail. Further, the court cited evidence that the battle had "raged" for a full ten minutes before the police were called. 205 Kan. at 419.

Appellant argues our reasoning in *Kimple* is inapplicable to the present case because the facts of this case "contrast strongly"

with those in *Kimple*. Appellant claims the assault on Rosie Gould lasted only about five minutes while the assault on the plaintiffs in *Kimple* consisted of a "five-hour sequence of events." Appellant misstates the facts in *Kimple*. As in the present case, the actual assault upon the plaintiffs in *Kimple* lasted only a few minutes. It is true, however, that in *Kimple* the assailants had been in the bar for several hours prior to the incident, while in the present case, Karen Brown and her friends had been at Taco Bell only a few minutes. But in this case, there is evidence Brown had been involved in a similar altercation at Taco Bell approximately two weeks before she attacked Rosie Gould. Also, there was evidence Taco Bell management had considered hiring security personnel because of a history of rowdyism on the premises.

In *Kimple*, we made the following statement regarding notice to the proprietor:

"It is not required that notice to the proprietor of such an establishment be long and continued in order that he be subject to liability; it is enough that there be a sequence of conduct sufficient to enable him to act on behalf of his patron's safety." 205 Kan. 415, Syl. ¶ 4.

The evidence in this case was sufficient to establish such a "sequence of conduct." Thus, we hold the jury's verdict against Taco Bell for Gould's injuries is supported by the evidence.

Our holding is consistent with decisions in cases from other jurisdictions. For example, in *Eastep v. Jack-in-the-Box, Inc.*, 546 S.W.2d 116 (Tex. Civ. App. 1977), a case with closely analogous circumstances, the defendant was held liable for injuries sustained by Mrs. Eastep while she and her husband were patrons in the defendant's restaurant. The Easteps had just placed their order and sat down when they were cursed loudly by a group at another table. After this group taunted plaintiffs for a few minutes, a fight ensued which resulted in Mrs. Eastep sustaining a severe laceration to her right arm. The fight ended approximately five to ten minutes after it began and the police arrived at the scene a few minutes after being called. 546 S.W.2d at 119. The Texas court found evidence to support the jury's findings that the restaurant, through its employees, was negligent in failing to demand that the assailants leave the premises, in failing to timely notify the police, and in failing to warn the

Easteps of the acts and condition of the assailants before the fight began. 546 S.W.2d at 119-20.

Similarly, in *Grasso v. Blue Bell Waffle Shop, Incorporated,* 164 A. 2d 475 (D.C. 1960), the plaintiff was injured in defendant's restaurant when he was grabbed and struck by an intoxicated, belligerent customer. The trial court granted a directed verdict in favor of the restaurant but the appellate court reversed, finding there was a jury question whether those in charge of the restaurant should reasonably have anticipated that the assailant might injure a customer and whether they took reasonable means to prevent such injury.

As in *Eastep* and *Grasso,* there was sufficient evidence to submit this case to the jury and sufficient evidence to support the jury's finding of liability on the part of Taco Bell.

For its second issue on appeal, Taco Bell challenges the district court's denial of its motion to join Karen Brown as a formal party to this action pursuant to K.S.A. 60-258a(c). That statute provides:

"On motion of any party against whom a claim is asserted for negligence resulting in death, personal injury or property damage, any other person whose causal negligence is claimed to have contributed to such death, personal injury or property damage shall be joined as an additional party to the action."

The district court, in denying appellant's motion, ruled that the intentional acts of a third party cannot be compared with the negligent acts of a defendant whose duty it is to protect the plaintiff from the intentional acts committed by the third party. In so ruling, the district court relied on *M. Bruenger & Co. v. Dodge City Truck Stop, Inc.,* 234 Kan. 682, 675 P.2d 864 (1984). Taco Bell argues that case has no application to and is not controlling upon the facts presented here.

In *M. Bruenger,* the plaintiff left his truck in the possession of the defendant for repairs. After the repairs were completed, the defendant's employees parked the truck in the lot with the doors unlocked and the keys in the ignition. Sometime that night the truck was stolen. At trial, the court allowed the comparison of the intentional acts of the thief with the negligent acts of the bailee under the doctrine of comparative negligence.

This court held that the trial court committed reversible error in allowing the jury to compare the negligence of the bailee. We reasoned the thief's level of care in using or abusing the truck did not affect the cause of the loss—the defendant's failure to exer-

cise reasonable care to prevent the theft. We further noted that we have never interpreted K.S.A. 60-258a to require the comparison of negligence with intentional wrongdoing. 234 Kan. at 687.

Our holding in *M. Bruenger* is applicable to the present case. Appellant attempts to distinguish these cases, arguing that *M. Bruenger* concerned a bailment as opposed to the present case, which concerns premises liability. However, we are not comparing apples and oranges. We look to the nature of the duty owed in each instance. A bailee owes a duty of reasonable and ordinary care to prevent the theft of bailed property. The premises owner owes a duty to use reasonable and ordinary care for the safety of invitees. The duty is the same in both cases. Accordingly, our holding in *M. Bruenger* is applicable to the present case and the trial court did not err in denying appellant's motion to join Karen Brown as an additional party to the action.

As its final point on appeal, appellant argues the trial court erred in submitting this case to the jury on the issue of punitive damages.

We discussed the nature of punitive damages in *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 681 P.2d 1038, *cert. denied* 469 U.S. 965 (1984), and held as follows:

"Punitive damages are permitted whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy." Syl. ¶ 16.

"Punitive damages are allowed not because of any special merit in the injured party's case, but are imposed to punish the wrongdoer for malicious, vindictive or willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs." Syl. ¶ 17.

Before discussing this issue any further, we will first set out the general rule regarding the liability of a corporation for punitive damages awarded for a tort committed by its employee:

"A corporation is not liable for punitive damages awarded for an employee's tortious acts within the scope of employment unless (a) a corporation or its managerial agent authorized the doing and manner of the act; (b) the employee was unfit and the corporation or its managerial agent was reckless in employing or retaining him; (c) the employee was employed in a managerial capacity and was acting within the scope of employment; or (d) the corporation or its managerial agent ratified or approved the act of the employee. Following Restatement (Second) of Torts § 909 (1977); Restatement (Second) of Agency § 217C (1957)." *Kline v. Multi-Media Cablevision, Inc.*, 233 Kan. 988, Syl. ¶ 4, 666 P.2d 711 (1983).

See also *Plains Resources, Inc. v. Gable,* 235 Kan. 580, Syl. ¶ 5, 682 P.2d 653 (1984).

In the present case, plaintiff alleges the failure of Taco Bell's manager, Mark Wills, to call the police or intervene to prevent the fight provided a sufficient basis upon which to award punitive damages. Since Wells was employed in a managerial capacity and was acting within the scope of his employment, the corporation can be held liable if Wells' failure to act was willful, wanton, or grossly negligent.

Appellant argues it cannot be held liable for punitive damages for negligent omissions amounting to wantonness. Rather, appellant contends punitive damages are recoverable only for affirmative acts, as opposed to a failure to act. This argument is without merit.

57 Am. Jur. 2d, Negligence § 105, p. 457, defines "wanton" as follows:

> "Generally speaking, inherent in wanton negligence is the idea of moral fault arising from the doing *or failing to do* an act with consciousness that the act *or omission* would probably cause serious injury, and with reckless indifference to consequences."

We have defined a "wanton act" as something more than ordinary negligence but less than a willful act. It must indicate a realization of the imminence of danger and a reckless disregard and indifference to the consequences. See *Bowman v. Doherty,* 235 Kan. 870, 686 P.2d 112 (1984); *Willard v. City of Kansas City,* 235 Kan. 655, 681 P.2d 1067 (1984); *Britt v. Allen County Community Jr. College,* 230 Kan. 502, 638 P.2d 914 (1982); *Friesen v. Chicago, Rock Island & Pacific Rld.,* 215 Kan. 316, 524 P.2d 1141 (1974). "Wantonness" refers to the mental attitude of the wrongdoer rather than a particular act of negligence. It follows that acts of omission as well as acts of commission can be wanton since reckless disregard and indifference are characterized by failure to act when action is called for to prevent injury.

Appellant also contends its conduct could not be "wanton" because, to constitute wantonness, the act must indicate a realization of the imminence of danger and a reckless disregard or complete indifference or an unconcern for the probable consequences of the wrongful act. *Britt v. Allen County Community Jr. College,* 230 Kan. at 510. Specifically, Taco Bell argues its conduct could not be wanton because it had no reason to know that harm was imminent. This argument is not supported by the

facts. The evidence at trial indicated that the shift manager, Mark Wills, saw Karen Brown strike the plaintiff while the plaintiff was still sitting in the booth, but he did nothing. As the parties moved toward the door, Wills came out from behind the food counter to an area within a few feet of the assailant and the plaintiff. He again failed to call the police or attempt to intervene, but instead observed a second attack upon Gould. It was not until Gould's friend, Theresa Holmberg, broke away from Karen Brown and ran inside and threatened to jump over the counter in order to phone the police that Wills finally called the police.

Evidence was also presented that Mark Wills believed Karen Brown had been the cause of a disturbance in the restaurant a couple of weeks before the present incident occurred, yet he failed to intervene or call the police when she began attacking Gould.

In addition, Mark Walters, the store manager, testified that since he became manager of the restaurant in August 1981 the late night patrons had been "destructive" and "uncontrollable." He stated that the late night business in Taco Bell originated in the neighboring bars and that the customers were rowdy and used loud, vulgar, and obscene language, and engaged in verbal fights and occasional physical fights. He also testified there was not sufficient help to handle such crowds and that Taco Bell's written policy was to call the police in case of disruptive customer behavior.

These facts indicate that Taco Bell was aware of the "imminence of danger" yet failed to intervene or warn plaintiff of such danger. There was substantial evidence to support the jury's award of punitive damages.

The judgment of the trial court is affirmed.

SCHROEDER, C.J., MILLER and McFARLAND, JJ., dissenting.