(921 P.2d 813)
No. 73,546

MARCUS J. LANNING, a Minor, by and through DAVID LANNING and CATHY LANNING, Next Friend and Natural Guardian, *Appellee/Cross-Appellant,* v. JEFF ANDERSON and BOARD OF EDUCATION OF UNIFIED SCHOOL DISTRICT NO. 447, Cherryvale, Kansas, *Appellants/Cross-Appellees.*

Opinion filed March 22, 1996.

*James P. Nordstrom* and *Kristine A. Larscheid*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellants/cross-appellees.

*W. J. Fitzpatrick*, of Independence, for appellee/cross-appellant.

Before BRAZIL, C.J., MARQUARDT, J., and RICHARD M. SMITH, District Judge, assigned.

MARQUARDT, J.: This is a personal injury action arising from a discus hitting Marcus J. Lanning during track practice. Jeff Anderson and the Board of Education of Unified School District No. 447 (School District) appeal from the district court's refusal to grant a directed verdict on the grounds there was not sufficient evidence upon which a reasonable jury could base a finding of gross and wanton negligence as required for liability under the recreational use exception of the Kansas Tort Claims Act (KTCA), K.S.A.

75-6101 *et seq.* See K.S.A. 1995 Supp. 75-6104(o). Coach Anderson and the School District also appeal from the district court's rulings on exclusion of evidence, refusal to give an instruction, juror/attorney misconduct, and a confusing verdict form. Lanning cross-appeals the application of the recreational use exception.

On May 12, 1993, Lanning was struck in the head by a discus. The accident occurred during a track practice at Cherryvale Middle School. The practice was supervised by two coaches, Jeff Anderson and Chuck Stockton.

Lanning was a member of the relay team that had practiced on the day of the accident. After running laps at the end of practice, Lanning and the other members of the relay team walked toward the school, taking a sidewalk that went through the middle of the playground.

The discus throwers were practice throwing from home plate of the baseball field toward the remainder of the playground. The sidewalk that Lanning and the other members of the relay team took leads to the end of the basketball court nearest the baseball field. Lanning was hit approximately 80-90 feet from where the discus was thrown.

Randy Hugo, the student who threw the discus that hit Lanning, used the "spin" technique when throwing. With the spin technique, the thrower is facing away from where the discus is going prior to the time of release. While others were throwing, the remaining discus throwers were to keep a watch out to ensure that people were not within range of the throw.

There was conflicting testimony over whether the discus participants were instructed to throw the discus or just practice technique on the day of the accident.

After Hugo released the discus, he and the other discus throwers noticed the group on the sidewalk. The discus throwers yelled "duck" or "heads up." The yelling alerted the group of relay runners on the sidewalk; however, Lanning was hit on the head by the discus.

Lanning had been a gifted athlete. As a consequence of the accident, Lanning suffered various cognitive deficits, and his neuro-

logical surgeon recommended that he never again play football or other heavy contact sports.

At the time of Lanning's injury, Coach Stockton was working with the girls' relay team. When the boys' relay team finished their practice, Coach Anderson told them to run two laps and go to the locker room. Coach Anderson did not direct the relay team to take any particular sidewalk or route to the locker room. Coach Anderson then went to help Coach Stockton with the other runners. Coach Anderson did not see the students walking down the middle sidewalk prior to the accident.

The middle school track practice was normally held at the high school. The high school track is bigger than the middle school playground. Coach Anderson decided to have track practice at the middle school playground instead of the high school track because the high school track was muddy and was being lined in preparation for a meet the next day.

In the spring of 1993, the coaches had held discus practice at the middle school playground approximately 10 times without incident.

Gordon McBride, principal of Cherryvale Middle School, and Roy Griffin, athletic director, testified that they did not know that the coaches held discus practice at the middle school playground.

At the close of Lanning's evidence, defense counsel moved for a directed verdict on the grounds that there was not sufficient evidence to go to the jury on the question of gross and wanton negligence. The district court denied the motion.

The jury returned an 11 to 1 decision, finding both Coach Anderson and the School District guilty of gross and wanton negligence. The jury attributed 10 percent of the fault to Lanning, 40 percent of the fault to Coach Anderson, and 50 percent of the fault to the School District. The jury found Lanning's total damages to be $252,731.94. The district court entered judgment in favor of Lanning and against Coach Anderson in the sum of $101,092.78 and against the School District in the sum of $126,365.97. Costs of the action were also entered against the defendants.

Coach Anderson and the School District moved for a judgment notwithstanding the verdict, or in the alternative, for a new trial.

Many of the arguments that are now the subject of this appeal were raised in this motion and the accompanying memorandum. Judge David L. Thompson orally denied the motion. Judge Thompson's judicial term was over the following Monday, and Judge Jack L. Lively entered a journal entry reflecting Judge Thompson's decision. Coach Anderson and the School District filed a motion for reconsideration, which was denied. The district court noted in its decision that a copy of the trial transcript was not provided for its review.

Coach Anderson and the School District argue that the district court erred in refusing to grant a directed verdict and that there was insufficient evidence for a finding of gross and wanton negligence.

The standard for review in either granting or denying a directed verdict is well established:

"In ruling on a motion for directed verdict pursuant to K.S.A. 1992 Supp. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and, where reasonable minds could reach different conclusions based on the evidence, the motion must be denied and the matter submitted to the jury. This rule must also be applied when appellate review is sought on a motion for directed verdict." *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 524, 856 P.2d 1313 (1993).

Generally speaking, the presence or absence of negligence in any degree should be left to the trier of fact. "Only when reasonable persons could not reach differing conclusions from the same evidence may the issue be decided as a question of law. [Citation omitted.]" *Gruhin v. City of Overland Park*, 17 Kan. App. 2d 388, 392, 836 P.2d 1222 (1992) (evaluating the appropriateness of summary judgment on a gross and wanton negligence issue); see *Vaughn v. Murray*, 214 Kan. 456, 459-60, 521 P.2d 262 (1974).

Under the KTCA, governmental liability is the rule and immunity is the exception. *Nichols v. U.S.D. No. 400*, 246 Kan. 93, 94, 785 P.2d 986 (1990). The general rule, subject to exceptions, is that governmental entities and governmental employees acting within the scope of their employment are liable for damages to the same extent as a private person. K.S.A. 75-6103(a); *Nichols*, 246 Kan. at 94-95.

K.S.A. 1995 Supp. 75-6104 provides an exception for public property used or intended for recreation:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

· "(o) any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, *unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury.*" (Emphasis added.)

Cases interpreting the recreational use exception have stated the elements of gross and wanton negligence as follows: " 'To constitute wantonness the [actor] must indicate a realization of the imminence of danger and a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act.' " *Boaldin v. University of Kansas*, 242 Kan. 288, 293, 747 P.2d 811 (1987) (quoting *Lee v. City of Fort Scott*, 238 Kan. 421, Syl. ¶ 1, 710 P.2d 689 [1985]); see PIK Civ. 2d 3.02.

Proof of a willingness to injure is not necessary because a wanton act is something more than ordinary negligence but less than willful injury. *Boaldin*, 242 Kan. at 293. Similarly, "mere negligence on the part of a governmental entity is not sufficient to establish a compensable claim under the statute." *Bonewell v. City of Derby*, 236 Kan. 589, 593, 693 P.2d 1179 (1984).

Both coaches testified that they did not believe they were exposing the students to danger.

Thus, if the coaches are taken at their word, and the requirement of the realization of the imminence of danger is given a subjective definition, the element is not met.

The question then becomes, does the conclusion that the coaches *should have known* of the imminence of danger constitute gross and wanton negligence sufficient to create a jury issue? Kansas case law provides support for both positions, depending on the specific facts of each case.

In *Friesen v. Chicago, Rock Island & Pacific Rld.*, 215 Kan. 316, 323, 524 P.2d 1141 (1974), the court stated that "it is the mental attitude of the wrongdoer, rather than particular negligent acts, that tends to establish wantonness."

Coach Anderson and the School Board argue that "[f]or a governmental entity to have a 'consciousness of danger,' it must have sufficient notice of that danger." Coach Anderson and the School Board suggest that *Lee*, 238 Kan. at 424-25, and *Willard v. City of Kansas City*, 235 Kan. 655, 658-59, 681 P.2d 1067 (1984), illustrate that in evaluating whether a governmental entity has met the element of realization of the imminence of danger, the most important factor is whether the entity has received notice of a prior injury.

Notice is *a* factor. In *Lee*, the Kansas Supreme Court stated:

"In *Willard*, we suggested the character of evidence which a plaintiff must offer to give rise to *an inference* of gross and wanton negligence: 'No evidence was offered that the City violated any standards or other municipal ordinances governing the installation of fencing in public areas, or that the City had *notice* of the potentially dangerous condition of the fence, which might give rise to an inference of gross and wanton negligence on the part of the City.' 235 Kan. at 659." (Emphasis added.) 238 Kan. at 424.

In the instant action, there had been no prior accident or close call that might have given the coaches notice of the imminence of danger. *Cf. Gruhin*, 17 Kan. App. 2d at 392 (holding that summary judgment was inappropriate where employees of a golf club had knowledge of a prior accident occurring at the same location). Discus practice had been held at the middle school playground approximately 10 times in the spring of 1993 without incident. There was no notice of imminent danger.

Arguing that actual knowledge is required and whether the coaches *should have known* of the imminence of danger is not the question, Coach Anderson and the School Board point to language from *Elliott v. Peters*, 163 Kan. 631, 634, 185 P.2d 139 (1947):

"[W]antonness involves a state of mind indicating indifference to *known circumstances*. There is substantial difference when wantonness is asserted between what a man actually knows and what he should have known. There is a potent element of consciousness of danger in wantonness. A man cannot realize something he does not know because he should have known it." (Emphasis added.)

In contrast, Lanning argues that a prior accident or admission of knowledge of danger is not required to show wantonness, pointing to *Mathes v. Robinson*, 205 Kan. 402, 406-07, 469 P.2d 259 (1970), where the court noted:

"The defendant knew of the existing condition of the unvented heaters, which is sufficient under the facts and circumstances to support the inference she knew or should have known they created a dangerous condition from which injury or death would likely or probably result from her failure to install proper vents. Moreover, *knowing of the dangerous condition* created on the property, her indifference to the consequences was established by the evidence." (Emphasis added.)

The keys to a finding of gross and wanton negligence are the knowledge of a dangerous condition and indifference to the consequences. The facts presented in this case show no knowledge of a dangerous condition. Without knowledge of a dangerous condition, indifference to the consequences does not become a consideration.

In a recent case, the Kansas Supreme Court stated: "For an act to amount to wantonness, the actor must have *reason to believe* that his act may injure another and commit the act anyway, with indifference to whether it injures another. *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 157 P.2d 822 (1945)." (Emphasis added.) *Smith v. Printup*, 254 Kan. 315, 358, 866 P.2d 985 (1993) (holding that the district court did not err in submitting the claim of wanton conduct to the jury where the defendant truck driver "testified that he knew it was reckless and could lead to an accident if he worked 17-18 hours a day," yet he worked over approximately 19 hours before the day of the accident).

In Prosser and Keeton, Law of Torts § 34, pp. 213-14 (5th ed. 1984), the authors provide some insight into how courts treat the requirement of a known or obvious risk:

"The usual meaning assigned to 'wilful,' 'wanton,' or 'reckless,' according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences. Since, however, it is almost never admitted, and can be proved only by the conduct and the circumstances, an objective standard must of necessity in practice be applied. The 'willful' requirement, therefore, breaks down and receives at best lip service, where it is clear from the facts that the defendant, whatever his state of mind, has proceeded in disregard of a high and excessive degree of danger, either known to him *or apparent to a reasonable person in his position*." (Emphasis added.)

In 57A Am. Jur. 2d, Negligence § 284, pp. 312-13, the authors draw the line as follows:

"The knowledge element of wantonness, although crucial, need not be shown by direct evidence; rather, it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate inference. . . . Although circumstantial evidence may be used to prove the element of knowledge . . . the question may not be left to the conjecture or speculation of the jury."

Kansas courts have noted that whether a case meets the definition of gross and wanton negligence "is so dependent upon the particular circumstances of each case as not to be susceptible of general statement." *Weber v. Southwestern Bell Telephone Co.*, 209 Kan. 273, 285, 497 P.2d 118 (1972) (evaluating premises liability where owner of airstrip was held to have met his duty to warn those he had invited to the airstrip of the danger of telephone lines).

The coaches' testimony indicates that if they had realized the imminence of danger, they would have proceeded differently. The coaches did not foresee that the group of runners would cut across the middle of the field. The coaches did not foresee that the discus throwers would fail to see the group on the sidewalk to alert them in time as they had practiced at the same field 10 times that spring without incident.

This court finds that there is no evidence to support a finding that the coaches realized the imminence of danger or that the coaches had reason to believe that someone would be injured at track practice. There is no evidence of the coaches' disregard of a known or obvious risk that was so great as to make it highly probable that harm could follow. The facts do not support a conclusion that practice was held in disregard of a high and excessive degree of danger known or apparent to a reasonable person in the position of either coach. We find that reasonable persons could not reach a different conclusion. Allowing the gross and wanton negligence question to go to the jury with the facts in this case was error. We reverse the district court.

Because we are reversing the district court decision on other grounds, the issues of exclusion of evidence, failure to give an in-

struction, the verdict form, and juror/attorney misconduct will not be decided.

Lanning cross-appeals from the district court's decision that the recreational use exception of the KTCA applied to this action.

Because this issue involves statutory interpretation, it raises a question of law. Thus, this court's review is unlimited. *Foulk v. Colonial Terrace,* 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

Lanning argues that K.S.A. 1995 Supp. 75-6104(o) does not apply to school-sponsored, supervised activities, regardless of where the injury occurs.

"The KTCA is applicable to school districts and their employees. *See* K.S.A. 75-6102(b), (c), (d)." *Greider v. Shawnee Mission Unified School D. 512,* 710 F. Supp. 296, 298 (D. Kan. 1989).

In *Nichols,* the court held that the recreational use exception applied where a high school student was injured after the football coach had instructed the student athletes to run in darkness to the locker room through a grassy waterway. 246 Kan. 93-94. The *Nichols*·court specifically rejected the argument that the KTCA did not apply to supervised activities. 246 Kan. at 94-95. Though the court did not specifically address the issue, *Nichols* also involved a school-sponsored activity.

" 'This court is duty bound to follow the law as established by Kansas Supreme Court decisions, absent some indication the Supreme Court is departing from its previously expressed position.' [Citation omitted.]" *Gruhin,* 17 Kan. App. 2d at 391. This court concludes that K.S.A. 1995 Supp. 75-6104(o) applies to school-sponsored, supervised activities.

Lanning also argues that the middle school playground is not a public recreational area as contemplated by K.S.A. 1995 Supp. 75-6104(o).

The plain language of the KTCA indicates that the middle school playground is a recreational area covered by K.S.A. 1995 Supp. 75-6104(o). K.S.A. 1995 Supp. 75-6104(o) provides that the recreational use exception applies to "any claim for injuries resulting from the use of any public property intended or permitted to be used as a . . . playground . . . for recreational purposes."

"Where a statute is plain and unambiguous, [an appellate] court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. [Citation omitted.]" *Nichols*, 246 Kan. at 95.

In order to adopt the position desired by Lanning, it would be necessary to create an exception to K.S.A. 1995 Supp. 75-6104(o). A court may create an exception to a statute only if such an exception "clearly appears to have been intended by the legislature. [Citation omitted.]" *Ballweg v. Farmers Ins. Co.*, 228 Kan. 506, 510, 618 P.2d 1171 (1980) (evaluating exceptions to awarding attorney fees for personal injury protection payments made under K.S.A. 40-3113a[e]). Here, no such intent has been shown.

Lanning attempts to distinguish *Nichols* in that *Nichols* did not expressly address the argument of whether school property falls within the area the legislature intended to protect. Lanning is correct that *Nichols* does not expressly address this issue. However, the conclusion that school property is a recreational area covered by K.S.A. 1995 Supp. 75-6104(o) is certainly implicit in that holding. The identical conclusion is supported by the plain language of the statute. Thus, this court concludes that a school playground is a recreational area covered by K.S.A. 1995 Supp. 75-6104(o).

Lanning also argues that "[t]eachers and school districts owe a duty of ordinary care to properly supervise students and provide a safe environment while under their care." For support, Lanning cites *Greider*, 710 F. Supp. 296, and *Nero v. Kansas State University*, 253 Kan. 567, 861 P.2d 768 (1993). In the instant action, the exception of K.S.A. 1995 Supp. 75-6104(o) removes the School District and its employees from the standard of ordinary care. Neither *Nero* nor *Greider* involved the recreational use exception of the KTCA.

In *Nero*, the court held that KSU did *not* qualify for an exception to governmental liability. 253 Kan. at 588 (holding that KSU did not qualify for the discretionary function exception of K.S.A. 1995 Supp. 75-6104[e]). In *Greider*, the court similarly held that the school district did not qualify for the discretionary function exception. 710 F. Supp. at 298-99. These cases are, thus, inapposite to the instant action.

Lanning also cites *Acosta v. Los Angeles Unified School Dist.*, 31 Cal. App. 4th 471, 479, 37 Cal. Rptr. 2d 171 (1995), *rev. denied* April 13, 1995, where the court held that the hazardous recreational activities exception did not include school-sponsored, extracurricular, athletic activities under the supervision of school personnel. *Acosta* involves a different statute from a different state and is not persuasive because of controlling authority from this state.

Finally, Lanning makes the conclusive argument that because he was injured by a discus thrown from 80 feet away, his injury did not result from the use of the playground. Lanning provides no authority or cognizable argument. This point lacks merit.

We hold that K.S.A. 1995 Supp. 75-6104(o) applies to this case.

Affirmed in part and reversed in part.