No. 79,540

KENNA J. REEVES, *Appellee/Cross-Appellant,* v. DAVID E. CARLSON and DAVID HOLLAND d/b/a DAVE'S PUMPING SERVICE, *Appellants/Cross-Appellees.*

(969 P.2d 252)

Opinion filed December 11, 1998.

*David R. Cooper,* of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause, and *James P. Nordstrom,* of the same firm, was with him on the brief for appellants/cross-appellees.

*W. Irving Shaw*, of Emporia, argued the cause and was on the brief for appellee/cross-appellant.

*Gary D. White, Jr.*, of Schroer, Rice, P.A., of Topeka, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

LOCKETT, J.: An intoxicated driver appeals an award of punitive damages assessed against him by the district court in a personal injury action. Plaintiff cross-appeals, claiming the jury's denial of loss of work time was inconsistent with the evidence at trial.

On November 19, 1994, Carlson was employed by codefendant David Holland, d/b/a Dave's Pumping Service. As part of his job, Carlson made deliveries and pickups in his employer's one-ton Chevrolet pickup truck. The pickup truck was equipped with dual rear tires and hauled a 500-gallon steel sewage tank in the back. At the end of the work day on November 19, 1994, after making an out-of-town delivery, Carlson and his helper purchased a six-pack of beer from a liquor store to drink on the return trip to Emporia. To avoid detection by his employer and the police, Carlson drove the back roads.

Carlson took his helper home, had a couple of mixed drinks at his helper's house, and then went home. After cleaning up, Carlson drove his employer's truck to a local drinking establishment where he drank an additional four to six mixed drinks. It was dark and cloudy, and the streets were wet when Carlson left the local bar after 11 p.m. to buy some cigarettes. Carlson drove residential streets to minimize the chance his employer might observe him driving the company truck.

Carlson was aware that he was under the influence of alcohol and understood that driving in an intoxicated condition could cause harm to himself and others. Carlson, while traveling at a speed of 35 mph, was particularly concerned about the width of the pickup truck on the residential streets, so he concentrated his vision in his rearview mirrors to ensure the truck cleared the cars parked on the residential street. While looking into the rearview mirror, Carlson ran a stop sign at the "T" intersection where the plaintiff, Kenna J. Reeves, lived.

When Carlson became aware of the danger, he applied the brakes, but the combination of the wet grass, the 35 mph speed, and the momentum of the liquid in the 500-gallon sewage tank in the back of the truck made the brakes ineffective. The truck crashed through the front of Reeves' home.

Reeves, a communications instructor at Emporia State University, was at home watching television and grading papers. Reeves heard a very loud noise and was immediately propelled through the air in the chair in which she was sitting. She bounced against the living room wall, the cabinets in the kitchen, and the refrigerator. Reeves got up and checked on her daughter, who was playing in the basement with a friend. She then called 911 for emergency assistance. Reeves was taken by ambulance to the hospital and treated for head and other injuries.

Carlson was arrested for driving under the influence of alcohol. When interviewed by the police, Carlson admitted that he was aware that he could not pass a breathalyzer test. When Carlson was asked by police if he thought he should be driving a vehicle in his condition, Carlson responded, "No, should have been my own." A breathalyzer test revealed that Carlson's breath alcohol concentration was .217.

Carlson was charged in a criminal complaint with various crimes. Carlson pled no contest to aggravated battery, driving under the influence of alcohol, driving while suspended, and transporting an open container. He received a dispositional departure sentence of 24 months' probation. Carlson's probation was later revoked for a subsequent driving while under the influence conviction.

Reeves filed this action November 16, 1995, alleging that Carlson and his employer were liable for injuries she sustained when the truck Carlson was driving crashed into the walls of her home. Reeves' motion to amend the petition to include punitive damages was granted.

When the civil action was tried, Carlson was in the custody of the Secretary of Corrections at the Norton Correctional Facility. The jury awarded Reeves $6,000 in noneconomic loss, $3,800 in medical expenses, and $1,000 for loss of consortium. The jury also found that Carlson's actions were wanton, a finding that supports

an award for punitive damages. In a separate proceeding, the trial judge granted the plaintiff $10,000 in punitive or exemplary damages.

Carlson and his employer appealed the assessment of punitive damages to the Court of Appeals. Reeves cross-appealed the jury's failure to award damages for loss of work time. The case was transferred to the Supreme Court pursuant to K.S.A. 20-3018(c).

## PUNITIVE DAMAGES

To warrant an award of punitive damages, a party must prove to the trier of fact by clear and convincing evidence that the party against whom the damages are sought acted with willful or wanton conduct, fraud, or malice. K.S.A. 60-3702(c). Plaintiff's allegations for punitive damages were based on a claim that Carlson's conduct was wanton. Carlson contends that the trial judge erred in refusing to grant a directed verdict because there was insufficient evidence to find that his conduct was wanton.

In ruling on a motion for directed verdict pursuant to K.S.A. 1997 Supp. 60-250, the court is required to resolve all facts and inferences to be drawn from the evidence in favor of the party against whom the ruling is sought and, where reasonable minds could reach different conclusions based on the evidence, the motion must be denied and the matter submitted to the jury. This rule must also be applied when appellate review is sought on a motion for directed verdict. *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 524, 856 P.2d 1313 (1993).

Carlson does not deny that he was intoxicated on the night of the accident. He admits he was aware of his intoxicated state, and cognizant that driving while intoxicated was dangerous to himself and to others. Further, Carlson also knew that driving while intoxicated was an unlawful act. Nevertheless, Carlson chose to drive. Carlson asserts even these admitted facts, combined with other evidence adduced at trial, do not support an inference that his conduct was wanton.

Wanton conduct is an act performed with a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences of the act. K.S.A. 60-3401(f).

A wanton act is more than ordinary negligence but less than a willful act. For an act to be wanton, the actor must realize the imminence of danger and recklessly disregard and be indifferent to the consequences of his or her act. *Gould v. Taco Bell*, 239 Kan. 564, 572, 722 P.2d 511 (1986). Wantonness refers to the mental attitude of the wrongdoer rather than a particular act of negligence. 239 Kan. at 572.

First, Carlson argues that K.S.A. 60-3702(c) requires clear and convincing proof that he was fully aware of and clearly understood that he was about to collide *with Reeves' home* and that he was indifferent to *the impending collision*. Carlson contends that he had no reason to anticipate a collision with a house, much less with Reeves' house. Therefore, he contends, it cannot be said that he was aware of the impending danger.

Carlson too narrowly defines what it means to commit a wanton act. In order for a plaintiff to prove wanton conduct, it is not necessary that the plaintiff's evidence establish a formal and direct intention to injure any particular person. It is sufficient if the defendant evinced that degree of indifference to the rights of others which may justly be characterized as reckless.

Recklessness is a stronger term than negligence. To be reckless, conduct must be such as to show disregard of or indifference to consequences, under circumstances involving danger to life or safety of others. *Mathes v. Robinson*, 205 Kan. 402, 406, 469 P.2d 259 (1970). The keys to a finding of wantonness are the knowledge of a dangerous condition and indifference to the consequences. *Lanning v. Anderson*, 22 Kan. App. 2d 474, 481, 921 P.2d 813, *rev. denied* 260 Kan. 994 (1996).

Carlson acknowledges he was acutely aware of the risk he was taking when he decided to drive his employer's pickup truck in his extremely intoxicated state at night on wet residential streets. Clearly, by Carlson's own admission, there is sufficient evidence to support the trier of facts' finding that Carlson acted recklessly and possessed the requisite degree of knowledge of danger.

As to indifference, Carlson asserts that he drove as carefully as possible under the circumstances, and, when he realized the imminent danger of collision, he applied his brakes to avoid the col-

lision. He was unable to avoid the collision only because of the momentum of the truck and the wet road. Therefore, Carlson concludes that he was not indifferent to the danger of driving while intoxicated or to the imminent threat of injury to Reeves.

Carlson's argument fails to recognize that the wanton conduct for which the punitive damages were assessed was not the collision, but his choice to drive under circumstances that would likely or probably result in a collision. The precautions and care Carlson details did little, if anything, to reduce that risk. In fact, Carlson's precautions probably exacerbated the danger: Carlson kept his eyes trained on the rearview mirror instead of on the road ahead in an attempt to monitor the position of his wheels in relation to the parked cars. Consequently, he approached the "T" intersection at 35 mph, oblivious to the requirement to stop until it was too late. Carlson admitted at trial that because of his intoxicated state, he failed to compensate for the wet road conditions and the 500-gallon steel sewage tank in the back of the truck.

It is fundamental that the law is regardful of human life and personal safety, and if one is grossly and wantonly reckless in exposing others to danger, it holds the person to have intended the natural consequences of his or her acts or omissions, and treats the person as guilty of willful and wanton wrong. One who with knowledge of existing conditions and aware from such knowledge that injury or death will likely or probably result from his or her conduct, and with reckless indifference to the consequences, consciously does some act or omits to discharge some duty, which produces the injurious result, is guilty of willful or wanton conduct. See *Mathes*, 205 Kan. at 405.

The evidence was sufficient to establish a reckless disregard of others, with a total indifference and unconcern for the probable consequences of involving danger to life and safety of others, although no harm was intended. Clearly, the precautions and extreme care Carlson claims he exercised to compensate for the dangerous situation were predictably insufficient to reduce the obvious risks involved. The minimal care required of Carlson under the circumstances was that Carlson not drive.

Carlson realized the dangers involved in driving under the circumstances. He was indifferent to the probable consequences of doing so. The facts admitted by Carlson and the evidence adduced at trial were sufficient to justify the trial court's decision to submit the issue of punitive damages to the jury.

## PUNITIVE DAMAGES ASSESSED

Carlson was assessed $10,000 in punitive damages. He contends that the punitive damage award was excessive considering the improbable nature of the accident that caused the harm, the criminal penalties he received as a result of this accident, and his necessitous financial condition. Furthermore, he argues, the award advances no public policy.

An award of punitive damages is not automatic upon a finding of willful or wanton conduct, fraud, or malice. *Trendel v. Rogers*, 24 Kan. App. 2d 938, 942, 955 P.2d 150 (1998). Under K.S.A. 60-3701, a bifurcated proceeding to determine punitive damages is established. The trier of fact determines if punitive damages should be awarded. The court, in a separate proceeding, then establishes the amount. A substantial list of factors is set forth in the court's consideration in determining the amount of the award.

Subject to the provisions of K.S.A. 60-3702, the standard of review remains one of abuse of discretion. We must first determine whether the provisions of K.S.A. 60-3702 have been applied by the trial court in setting the amount of punitive damages. Once that determination has been made, the amount awarded will be set aside only upon a showing that the trial court abused its discretion, which is another way of saying that the action of the trial court was arbitrary, capricious, or unreasonable. When determining the amount of punitive damages to be awarded under K.S.A. 60-3702, it is incumbent on the trial court to make sufficient findings of fact to afford meaningful appellate review. See *Smith v. Printup*, 262 Kan. 587, 597, 938 P.2d 1261 (1997).

Carlson does not dispute the serious harm to the victim, but he does dispute that the harm was a foreseeable consequence of his misconduct. K.S.A. 60-3702(b) provides:

"At a proceeding to determine the amount of exemplary or punitive damages to be awarded under this section, the court may consider:

"(1) The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct;

"(2) the degree of the defendant's awareness of that likelihood;

"(3) the profitability of the defendant's misconduct;

"(4) the duration of the misconduct and any intentional concealment of it;

"(5) the attitude and conduct of the defendant upon discovery of the misconduct;

"(6) the financial condition of the defendant; and

"(7) the total deterrent effect of other damages and punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, compensatory, exemplary and punitive damage awards to persons in situations similar to those of the claimant and the severity of the criminal penalties to which the defendant has been or may be subjected.

"At the conclusion of the proceeding, the court shall determine the amount of exemplary or punitive damages to be awarded and shall enter judgment for that amount."

The trial court made the required findings to support the punitive damage award, including the findings that Carlson was aware of the likelihood that his conduct would cause serious harm and that serious harm arose from Carlson's misconduct. The harm suffered by Reeves was not unforeseeable under the circumstances.

Carlson argues that the punitive damage assessment exceeds that which is necessary to punish his conduct. He recites an extensive list of court-imposed obligations that he must satisfy, some of which resulted from this action and some from other circumstances, including a child support arrearage and medical bills. The court considered Carlson's financial condition, which included the fact that since incarceration, Carlson had earned 60 cents a day. The trial court was aware of Carlson's obligations.

When considering the award of punitive damages, the trial court was particularly concerned that Carlson had violated his probation by incurring a subsequent DUI conviction. The court noted that the loss of liberty resulting from the criminal consequences of this incident had not been a sufficient deterrent to Carlson's further violation of the same law. The trial court clearly had an interest in making Carlson aware of the punitive powers of the court to im-

press upon recalcitrant offenders the seriousness of their destructive choices.

Finally, Carlson contends that the assessment of punitive damages serves no public purpose but merely imposes a potentially insurmountable burden on him. He argues that the punitive award only discourages him regarding future attempts to become a productive member of society. This is another way of alleging the court acted arbitrarily, capriciously, or unreasonably. Carlson's argument has no merit. Clearly, the trial court imposed the punitive damages in order to advance the objective of impressing upon Carlson the destructive consequences of his poor choices regarding drinking and driving. This is neither arbitrary nor unreasonable. Under the circumstances, it cannot be said that the court abused its discretion in assessing $10,000 in punitive damages against Carlson.

## CROSS-APPEAL

The pretrial order included a claim by Reeves against Carlson for lost wages in the amount of $1,000. The jury verdict denied Reeves an award for lost wages. Reeves moved the court for a new trial, arguing the jury's verdict was inconsistent with the uncontroverted evidence adduced at trial. The trial court denied the motion, stating the trial record was silent as to the loss of work time.

We note that there is scant evidence adduced at trial regarding plaintiff's loss of work. Reeves testified that she earned $2,400 per month and that, in addition to the Thanksgiving and Christmas holidays from work, she missed 8 days of work due to her injuries. Based on the evidence adduced, the jury could have found the evidence insufficient to award the plaintiff for wages claimed lost.

A negative finding that a party did not carry its requisite burden of proof will not be disturbed on appeal absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. *Kansas Pipeline Partnership v. Kansas Corporation Comm'n*, 24 Kan. App. 2d 42, 52, 941 P.2d 390, *rev. denied* 262 Kan. 961 (1997). The trial court did not err in denying plaintiff's motion for a new trial.

Affirmed.