**LITITZ MUTUAL INSURANCE CO., Plaintiff,**

v.

**ROYAL INSURANCE COMPANY OF AMERICA, Defendant.**

**No. 98–2256–JWL.**

United States District Court, D. Kansas.

July 23, 1999.

---

James H. Ensz, Ensz & Jester, P.C., Kansas City, MO, for Lititz Mutual Insurance Company, plaintiff.

Paul P. Hasty, Jr., Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, for Royal Insurance Company of America, defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Lititz Mutual Insurance Company filed this declaratory judgment action against defendant Royal Insurance Company of America seeking reimbursement for plaintiff's indemnification and defense of Insignia Management Group, L.P., an insured under policies issued by both plaintiff and defendant. This matter is presently before the court on several motions, including two motions for summary judgment filed by defendant (docs. # 79 and 101); defendant's motion to amend the pretrial order (doc. # 98); plaintiff's motion for sanctions (doc. # 109); and defendant's motion to strike plaintiff's request for trial by jury (doc. # 112). As set forth in more detail below, defendant's first motion for summary judgment (doc. # 79) is denied, but defendant's motion for summary judgment based on the absence of evidence of wanton conduct (doc. # 101) is granted and, thus, plaintiff's complaint is

dismissed in its entirety. Plaintiff's motion for sanctions (doc. #109) is also granted. The remaining motions are denied as moot.

## I. Facts [1]

In July 1995, Ms. Felic Richard leased a three-bedroom apartment in the Silver City apartment complex in Kansas City, Kansas. At that time, the Silver City apartments were owned by Silver City Housing, L.P. ("Silver City") and managed by Insignia Management Group, L.P. ("Insignia"). In May 1996, Ms. Richard notified Insignia that the water heater in her apartment needed repair. A maintenance worker serviced the water heater and represented to Ms. Richard that the water heater was repaired and was operating properly. On June 29, 1996, Ms. Richard's daughter, Aaliyah Lockett, was fatally injured in the apartment after falling into a bathtub of scalding water.

The management contract between Silver City and Insignia contains an indemnification provision in which Silver City agreed to

> indemnify, defend and save [Insignia] and its employees harmless from all suits in connection with the Property and from liability for damages to Property and injuries to or death of any employee or other person whatsoever, not resulting from the gross negligence of [Insignia], its employees and independent contractors . . . .

Silver City was the named insured on a policy of insurance issued by plaintiff Lititz. This policy also provided coverage to Insignia as Silver City's "real estate manager." Insignia obtained its own liability policy through defendant Royal. Defendant Royal's policy insured Insignia as a "named insured."

In December 1996, Ms. Lockett's survivors filed a lawsuit against Silver City and Insignia in Kansas state court. Plaintiff Lititz retained counsel to defend Silver City and defendant Royal retained counsel to defend Insignia.[2] In the state court action, Insignia filed a cross-claim against Silver City based on the management contract. Subsequently, Silver City unconditionally agreed to defend and indemnify Insignia in that action. In February 1998, the state court action was settled in mediation and plaintiff Lititz paid the plaintiffs in that case the sum of $700,000 for the full release in satisfaction of plaintiffs' claims against Silver City and Insignia.

## II. Procedural History

In the pretrial order, plaintiff Lititz seeks reimbursement from defendant Royal for plaintiff's indemnification and defense of Insignia in the state court action. Both parties have previously moved for summary judgment on certain issues. Some of the court's rulings with respect to those motions are helpful to an understanding of the posture of the case today. In a prior order, the court held that the indemnification provision in the management contract between Silver City and Insignia takes precedence over the "other insurance" clauses of the insurers. In light of that ruling, plaintiff Lititz argued, in a previous motion, that the indemnification agreement contained in the management contract between Silver City and Insignia was inapplicable because the underlying claim resulted from Insignia's gross negligence—a circumstance under which the indemnification provision expressly does not apply. In response, defendant asserted that plaintiff had waived this defense to indemnification because it (through its insured, Silver City) had unconditionally agreed to indemnify Insignia in the state court action. The court held that genuine issues of material fact existed with respect to whether plaintiff Lititz or its insured, Silver City, had relinquished the right to raise an indemnification defense based on Insignia's purported gross negligence and, if not, whether

---

1. The facts are either uncontroverted or related in the light most favorable to plaintiff.

2. In February 1997, plaintiff Lititz assumed the defense of Insignia.

Insignia's conduct amounted to gross negligence.

Since the court's ruling, the parties have engaged in additional factual discovery with respect to plaintiff's allegations of gross negligence. Defendant now moves for summary judgment on plaintiff's claims based on the absence of any evidence that Insignia's conduct was wanton.

### III. Defendant's Motion for Summary Judgment [3]

As described above, the issues in this case have been narrowed considerably in light of previous motions for summary judgment. In essence, because of the indemnification agreement between Silver City and Insignia, plaintiff can recover from defendant only upon a showing that the injuries to Aaliyah Lockett resulted from Insignia's "gross negligence." [4] In one of its two pending motions for summary judgment, defendant maintains that summary judgment is appropriate because plaintiff has failed to come forward with sufficient evidence from which a trier of fact could reasonably conclude that Insignia's conduct was wanton.

█ Under Kansas law, "wanton conduct" is an act performed with a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences of the act. *See Reeves v. Carlson*, 266 Kan. 310, 969 P.2d 252 (1998). Wantonness refers to the mental attitude of the wrongdoer rather than a particular act of negligence. *Id.* (citing *Gould v. Taco Bell*, 239 Kan. 564, 572, 722 P.2d 511 (1986)). To prove wanton conduct, a plaintiff need not establish a formal and direct intention to injure any particular person. *Id.* It is sufficient if the defendant evinced that degree of indifference to the rights of others which may justly be characterized as reckless. *Id.* The keys to a finding of wantonness are the knowledge of a dangerous condition and indifference to the consequences. *Id.* (citing *Lanning v. Anderson*, 22 Kan. App.2d 474, 481, 921 P.2d 813 (1996)).

In support of its allegation that Insignia acted wantonly, plaintiff highlights the following uncontroverted facts. Meredith Sullivan, Insignia's maintenance supervisor at the Silver City apartments at the time of the accident, was aware that the faucets at another apartment complex managed by Insignia contained a "scald-guard" feature—a safety device that controlled the water temperature. Insignia, however, did not replace the faucets at Silver City with "scald-guard" faucets. In addition, both Mr. Sullivan and Janet Heard, Insignia's property manager at the Silver City apartments at the time of the accident, remembered reading a memorandum or newsletter issued by Insignia before the accident advising that all hot water heater controls should be set on the "warm" setting. Moreover, property managers were required to do quarterly inspections of each apartment and this inspection included the hot water heater. Finally, a maintenance worker (presumably employed by Insignia) serviced the hot water heater in Ms. Richard's apartment after she complained in May that the water heater needed repair. At the time of the accident, in late June,

---

3. In its other motion for summary judgment, defendant sets forth a variety of bases for summary judgment, including waiver, estoppel and res judicata. The court has reviewed the papers of both parties with respect to this motion and has concluded that genuine issues of material fact exist such that summary judgment for the reasons set forth in defendant's motion is precluded.

4. Kansas does not recognize degrees of negligence and, thus, has no category for "gross negligence." Nonetheless, Kansas courts draw a distinction between ordinary negligence and wanton conduct, which is defined as the reckless disregard for the rights of others with a total indifference to the consequences. *Danisco Ingredients USA, Inc. v. Kansas City Power & Light Co.*, —— Kan. ——, —— P.2d ——, 1999 WL 463276, at *9 (Kan. July 9, 1999) (citing *Muhn v. Schell*, 196 Kan. 713, 715, 413 P.2d 997 (1966)). In the pretrial order, plaintiff clarified that the phrase "gross negligence" as used in the indemnification agreement is synonymous with "wanton conduct" as that phrase is defined under Kansas law.

the water heater in Ms. Richard's apartment was set on the "very hot" setting. Ms. Richard and the victim's father, David Lockett, testified that they never touched or made any adjustments to the hot water heater. Ms. Richard further testified that, to her knowledge, her children never opened the door of the closet where the hot water heater was located.

■ According to plaintiff, the facts set forth above give rise to an inference that Insignia acted wantonly because Insignia employees knew or should have known that the hot water heater in Ms. Richard's apartment was set on the "very hot" setting and yet Insignia employees failed to adjust Ms. Richard's hot water heater to the "warm" setting as advised by Insignia management. The court disagrees. Significantly, the record is completely devoid of evidence that Insignia had any knowledge, actual or constructive, about the setting of the hot water heater in Ms. Richard's apartment or that the condition of this particular hot water heater was potentially dangerous. Neither Mr. Sullivan nor Ms. Heard had any reason to know about the specific hot water heater in Ms. Richard's apartment. Indeed, there is no evidence that either of these individuals had any contact with Ms. Richard or her family or that these individuals ever entered Ms. Richard's apartment. Similarly, there is no evidence that either of these individuals was ever made aware of any problems or complaints with respect to the water heater in Ms. Richard's apartment that would give rise to the inference of any knowledge concerning the hot water heater's setting. Although there is evidence that Ms. Richard complained to "maintenance" about the water heater, the nature of her complaint was not something from which a reasonable fact finder could infer that Insignia had knowledge that the water setting was too hot or that the condition of the water heater was potentially dangerous. On this point, Ms. Richard testified as follows:

> The hot water heater was first leaking water where it would leave a puddle of water there on the floor. And then one day the hot water—no, first it would keep going out. The pilot light would just go out and all we would have was cold water. Then the puddle of water came. Then steam just spurted everywhere. Then we called—no—I don't know if we called them then or before, but we had been calling maintenance all the time for when it went out and then cold water.

No reasonable factfinder could infer, based on Ms. Richard's testimony, that the maintenance crew should have been aware of the imminence of danger. The evidence reflects only that Ms. Richard reported to the maintenance crew that the pilot light was going out and that the apartment had cold water. On this record, plaintiff is not entitled to an inference that Insignia knew that danger was imminent. *See Reeves*, 969 P.2d 252 ("For an act to be wanton, the actor must realize the imminence of danger and recklessly disregard and be indifferent to the consequences of his or her act."); *Lee v. City of Fort Scott*, 238 Kan. 421, 424–25, 710 P.2d 689 (1985) (affirming summary judgment in favor of defendant on issue of wanton conduct where plaintiff failed to offer any evidence establishing that defendant realized the imminence of danger and exhibited a complete disregard of the consequences).

Moreover, there is no evidence in the record before the court concerning the actions of the maintenance worker who serviced the water heater. The worker's identity is apparently unknown to the parties and, therefore, there is no testimony from the worker with respect to the condition of the water heater at the time he serviced it or what steps he took to repair the water heater. Although plaintiff suggests that the setting of Ms. Richard's water heater must have been set too high at the time the maintenance worker serviced the water heater (and, thus, the worker acted wantonly by not adjusting the water heater appropriately), or that the maintenance worker must have adjusted the setting too high, this argument is simply not persuasive. It is based entirely

on speculation. The evidence demonstrates, for example, that the occupants of Ms. Richard's apartment had access to the water heater at all times. The water heater was located in an unlocked closet in the apartment. Anyone in the apartment, occupants or visitors, could have adjusted the temperature setting. In such circumstances, plaintiff is not entitled to an inference that the maintenance worker either failed to adjust the temperature setting appropriately or that he set the temperature too high.

Finally, with respect to plaintiff's argument that Insignia failed to install "scald-guard" faucets despite its knowledge that other apartment complexes had installed such faucets, there is simply no evidence in the record that failing to install "scald-guard" faucets gives rise to an inference of recklessness. There is no evidence of a recognized imminent danger in the absence of their installation, or that they were required by law at the time relevant to the facts here or even that Insignia was responsible for deciding what type of faucets to install in the Silver City apartments. *See Willard v. City of Kansas City*, 235 Kan. 655, 659–60, 681 P.2d 1067 (1984) (affirming summary judgment in favor of defendant on issue of wanton conduct in part because plaintiff failed to show that City had violated any standards or ordinances governing relevant conduct). In fact, the evidence suggests that either Silver City or a contractor hired by Silver City made these types of decisions.

In sum, plaintiff's evidence establishes, at most, that Insignia knew that the water heaters in the complex should be set at the "warm" setting. Perhaps Insignia should have taken steps to ensure that the water heaters in the complex were adjusted to this setting. Perhaps Insignia's failure to take such steps was negligent; perhaps it was not. But in the absence of any evidence that anyone at Insignia knew or should have known that the temperature of Ms. Richard's water heater was set too high and recklessly failed to do anything about it, no reasonable fact finder could conclude that Insignia's conduct was "wan-

ton" as that term is defined under Kansas law. *See Reeves*, 969 P.2d 252 ("One with knowledge of existing conditions and aware from such knowledge that injury or death will likely or probably result from his or her conduct, and with reckless indifference to the consequences, consciously does some act or omits to discharge some duty, which produced the injurious result, is guilty of willful or wanton conduct."). In sum, the evidence set forth by plaintiff fails to establish facts or circumstances which might give rise to an inference of wanton conduct on the part of Insignia. Accordingly, summary judgment in favor of defendant is appropriate and plaintiff's complaint is dismissed.

## IV. Plaintiff's Motion for Sanctions

Pursuant to Fed.R.Civ.P. 16(f), plaintiff requests an order requiring defendant to pay the reasonable expenses and attorneys' fees incurred by plaintiff in connection with plaintiff's response to defendant's motion to amend the pretrial order. As set forth below, the court concludes that sanctions against defendant are warranted, and orders defendant to pay plaintiff $200.00 for fees and costs incurred by plaintiff in responding to defendant's motion to amend the pretrial order and in bringing this matter before the court.

█ The final pretrial conference for this case was held on April 26, 1999 at 11:00 a.m. Counsel for both parties had been notified of the date and time of the pretrial conference. Nonetheless, counsel for defendant failed to appear for the conference. Although the court did not order sanctions against defendant at that time, the court noted in the pretrial order that the court would "revisit the issue if any motion to amend the pretrial order is made which would not have been necessary had defendant appeared at the final pretrial conference." Thereafter, defendant filed a motion to amend the pretrial order and plaintiff filed its response. If defendant had attended the pretrial conference, however, the court would have

been able to address the issues raised in defendant's motion at the conference, thereby obviating the need for defendant's motion. In such circumstances, the court concludes that defendant must reimburse plaintiff for its fees and costs associated with filing a response to defendant's motion. *See* Fed.R.Civ.P. 16(f); D. Kan. Rule 16.2(d) & 11.1(b)(4). Although plaintiff, in its motion for sanctions, has not requested a specific dollar amount, the court believes that an award of $200.00 is commensurate with prevailing hourly rates in this community in light of the amount of time that should have been required to respond to defendant's motion and to bring this matter before the court. The court therefore awards plaintiff $200.00 in attorneys' fees and costs.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 79) is **denied**, defendant's motion for summary judgment (doc. # 101) is **granted** and, thus, plaintiff's complaint is dismissed in its entirety. Plaintiff's motion for sanctions (doc. # 109) is **granted**. The remaining motions (docs. # 98 and # 112) are **denied as moot**.

**IT IS SO ORDERED.**