**TAGAIMAMAO MASANIA`I, Plaintiff,**

**v.**

**APOUA TEDRICK and BILL TEDRICK d.b.a. THE COUNTRY CLUB, ASUELU TIUMALU, SAMOA ALEFOSIO and ROBERT FAIRHOLT, Defendants.**

High Court of American Samoa
Trial Division

CA No. 121-95

January 9, 1998

Before KRUSE, Chief Justice, TAUANU`U, Chief Associate Judge, and SAGAPOLUTELE, Associate Justice.

Counsel: For Plaintiff, Jennifer L. Joneson
 For Defendants Apoua and Bill Tedrick d.b.a. The Country
 Club, Brian M. Thompson

## OPINION AND ORDER

### Facts

Sometime in the early afternoon of February 24, 1994, plaintiff ("Masania`i"), then a Marine Patrol Officer with the Department of Public Safety, began drinking alcohol with some fellow officers after spending a morning cleaning one of their Marine Patrol vessels. Masania`i continued to drink a large quantity of alcohol throughout the day and into the early evening. He eventually ended up at the home of one of his fellow officers, and continued drinking solidly until approximately 8 p.m. He left, and then after colliding with a parked vehicle, drove to the Solaita Field where he slept for a few hours. Upon awakening, he drove to the Country Club, a restaurant/nightclub located next to the Ili`ili Golf Course. He walked to the front entrance after being told that the back door was locked. Upon reaching the front entrance, Masania`i was denied entry because of his improper attire (a tank top). Masania`i initially tried to persuade the security guard at the door, Tavita Kisena ("Kisena"), and the manager Fiona Alama, ("Alama") to let him in, but they would not. Masania`i walked back to his car, put on a police jacket marked "Marine Patrol," and was then allowed into the club.

After entering the Country Club, Masania`i tried to order a drink but had no money. He then persuaded two or three different people to buy him drinks. The cashier sat these drinks in front of Masania`i, but testified

that she did not see Masania`i actually drink them.

After approximately one hour, Masania`i approached a table to speak with Lena Sevaaetasi ("Sevaaetasi"). Robert Fairholt ("Fairholt"), Sevaaetasi's uncle, was sitting at the table with her. At some point during the conversation, Masania`i made an offensive comment either to or about Sevaaetasi, whereupon Fairholt began yelling at Masania`i. Some of Fairholt's friends came over to the table, including Robert Schwenke ("Schwenke") who began to push Masania`i. At this point, two Country Club security guards, Kisena and Hercules, noticed the commotion and intervened by separating the parties. During the separation of the parties, another man, Samoa Alefosio ("Alefosio"), punched Masania`i in the head. As Hercules faced the young men involved in the altercation (Schwenke, Alefosio, and Tiumalu), Kisena asked Masania`i if he wanted to leave. At the behest of Masania`i's nephew, Danny Pau ("Pau"), Masania`i agreed to leave. Kisena and Pau both proceeded to escort Masania`i to his car. During this initial altercation, the police were called by a Country Club employee, Violet Ah Kiong, at the instruction of Alama.

As Kisena, Pau, and Masania`i were walking down the front walkway toward the parking area, they passed another security guard Adam Vitale ("Vitale"). As Vitale neared the front entrance, he noticed Schwenke head out of the entrance and pick up a beer bottle. Vitale asked Schwenke where he was going, and Schwenke told Vitale that he was Masania`i's brother. As Schwenke passed Vitale, he threw the beer bottle, hitting Masania`i in the head and covering Kisena with shattered glass and beer. As Masania`i fell to the ground, Kisena tried to catch and prevent him from hitting his head on the ground. The blow from the beer bottle rendered Masania`i unconscious.

Immediately after the bottle hit Masania`i, other young men ran outside. Schwenke immediately grabbed Masania`i and dragged him from where he fell in between cars into the open parking lot. Schwenke, Alefosio, and Tiumalu then began beating and kicking Masania`i. There is contradictory evidence as to who helped stop the fight but it appears that Kisena, Pau and Vitale all tried, to some extent, to protect Masania`i. Apparently the beating lasted less then a minute and then stopped abruptly, with Schwenke, Alefosio and Tiumalu returning into the Country Club.

Immediately after the attack, Kisena brought Masania`i ice and a towel and Vitale cleared Masania`i's bloody nose so he could breathe. When the police arrived a short time later, Kisena and Vitale helped place Masania`i in the patrol car for transport to the hospital.

123

## Discussion

Masania`i brings this action to recover the damages he suffered that evening. His action against the Tedricks and the Country Club (referred to jointly as the "Country Club") is based upon three theories: first, that the Country Club breached its duty to provide reasonable security; second, that the Country Club is vicariously liable for the negligent acts of its employees; and, third, that the Country Club breached its statutory duty to refuse to allow admittance to an intoxicated individual and to serve alcohol to an intoxicated individual, violations of A.S.C.A. §§ 27.0531(a) and (f) respectively.

Masania`i also sues Asuelu Tiumalu, Samoa Alefosio, and Robert Fairholt for battery.

### A. The Country Club

### 1. Negligence

■ First, Masania`i alleges the Country Club breached the duty a land possessor owes an invitee. While a land possessor is not an insurer of the safety of its invitees against the acts of third persons, it has duty to exercise reasonable care in providing them protection. RESTATEMENT (SECOND) TORTS § 344, cmt. d.[1]

The Country Club is a drinking establishment. The evidence presented at trial suggests that a sufficient history of violence exists at this, and other drinking establishments in American Samoa, to warrant adequate security. The evidence at trial, however, showed that the Country Club provided a reasonable level of security. On the night in question, at least three security guards and various other staff members were on duty.

We conclude that the Country Club, as a drinking establishment in American Samoa, owed a duty to Masania`i to provide a reasonably sufficient number of security personnel in order to afford its patrons reasonable protection. RESTATEMENT (SECOND) TORTS § 344, cmt. f. The evidence shows that the Country Club provided an adequate number of security personnel. Whether those security personnel adequately performed their duties is another question, however.

---

[1] The Country Club argues that it does not own the parking lot and is not responsible for any injury that occurred there. Substantial evidence showed that the Country Club exercised exclusive dominion and control over the parking lot during evening hours. Moreover, the fight outside was a continuation of the fight that began inside. *See also Holiday Inns v. Shelborne, et. al.*, 576 So. 2d 322 (Fla.Dist.Ct.App. 1991).

## 2. Vicarious Liability

■ Masania'i also argues that the employees of the Country Club acted negligently and that the Country Club would therefore be vicariously liable for their negligence. Masania'i argues that the Country Club employees had a duty to act reasonably in rendering aid to him and that they failed to do so. As stated above, this duty arises only if the land possessor or his employee discovers, or in the exercise of reasonable care should discover, an impending or occurring accidental, negligent, or intentionally harmful act of a third person. *Gould v. Taco Bell*, 722 P.2d 511, 515 (Kan. 1986); RESTATEMENT (SECOND) OF TORTS § 344(b).

Specifically, Masania'i argues that the security guards acted negligently in removing him from the premises without adequately insuring that the assailants remained inside the establishment until he was out of danger.

As stated above, the security guards immediately broke up the fight inside the Country Club, separated the combatants, and escorted Masania'i outside. Vitale, however, had no idea that an altercation had occurred inside when Schwenke ran past him. Before Vitale could adequately inform himself, Schwenke had already thrown the bottle. At that time, many other people came running out of the Country Club and an immediate, vicious beating ensued which was over as fast as it began. During this very short period of time, the security guards did their best to protect Masania'i, risking serious harm to themselves in the process.

■ The employees had a duty to act reasonably under the circumstances. The employees did not have a duty to risk their lives, and they did not have a duty to act perfectly. It is true that the security guards could have acted differently, and had they done so, Masania'i may not have been injured as much. However, the evidence is insufficient to show that any employee of the Country Club acted unreasonably in trying to prevent the fight, protect Masania'i, or in rendering aid to Masania'i after the beating was over.

We, therefore, find that none of the employees of the Country Club acted negligently in rendering aid to Masania'i, and thus no employee negligence exists for which the Country Club can be held vicariously liable.

## 3. Violation of A.S.C.A. § 27.0531

■ Masania'i also argues that the Country Club breached its statutory duty to refuse entry and service to an intoxicated person. *See* A.S.C.A. §§ 27.0531 (a) and (f).

125

Both Kisena and Alama testified at trial that they could discern that Masania'i had been drinking but, based on their experience, he did not appear to them to be intoxicated. They also testified that it is the policy of the Country Club to deny access to any person who appears intoxicated. We find, however, that Masania'i was intoxicated and his condition should have been visibly apparent to Kisena and Alama, as it was to others. Pau testified that when Masania'i first approached him inside the Country Club, Masania'i was obviously intoxicated. Pau cited to his staggering, his slurred speech, his spitting while talking, his glazed eye, and his just not making sense. Also, Fairholt testified that Masania'i appeared intoxicated when he joined them at their table, citing to plaintiff's conduct and demeanor, the way he stumbled around, the manner of his speech, and his inability to engage in normal conversation. These observations by Pau and Fairholt are bolstered by the credible evidence offered by Department of Safety Officer Kim Morris, Ben Solaita, and Masania'i. The combined testimony of all these witnesses show that Masania'i had been involved in a protracted drinking binge and that when he arrived at the Country Club, he was noticeably intoxicated. We conclude that plaintiff's intoxicated state should have been reasonably discernible to the Country Club's employees.

a. Prohibited Service

A.S.C.A. § 27.0531(a) prohibits the service of alcohol to intoxicated individuals. It is clear from the testimony that although Masania'i did not purchase alcohol for himself, he was indeed served alcohol while he was intoxicated. As such, we find that the Country Club breached its statutory duty to deny service to intoxicated persons. The next question, however, is whether that breach was the proximate cause of Masania'i's injuries.

An actor's negligent conduct is the legal cause of harm to another if his conduct is a substantial factor in bringing about the harm. RESTATEMENT (SECOND) TORTS § 431(a). Because no evidence suggests that Masania'i drank the beers that were served to him, we cannot find that the County Club's breach of its statutory duty to refrain from serving alcohol to Masania'i while he was intoxicated was a substantial factor in bringing about Masania'i's injuries.

b. Prohibited Admission

A.S.C.A. § 27.0531(f) prohibits a licensee from allowing intoxicated persons to enter the premises. As stated above, we find that Masania'i was intoxicated upon entering the Country Club. Since the Country Club's employees allowed Masania'i entrance, the Country Club breached its duty under A.S.C.A. § 27.0531(f).

■ Again, causation turns on whether the Country Club's breach of its statutory duty to deny Masania`i entrance into the club when he was intoxicated was a substantial factor in bringing about the harm Masania`i suffered. In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. RESTATEMENT (SECOND) TORTS § 431 cmt. a. The negligence must be a substantial factor in bringing about the harm. *See Id.*

We hold that one of the harms § 27.0531(f) was designed to prevent is harm to intoxicated individuals and patrons of a licensed drinking establishment. It is clear that intoxicated individuals have an increased tendency to be drawn to altercations.[2] Drunken behavior is highly unpredictable; slight irritations, whether real or imagined, readily lead to aggressive and irrational behavior on the part of the inebriates.[3] As such, we find that the conduct of the Country Club in allowing Masania`i to enter the club while he was intoxicated increased the foreseeable and predictable risk that Masania`i would be involved in an altercation. Since the harm that Masania`i received was indeed the result of a drunken altercation, we find that this harm was well within the scope of the risk created by the Country Club's inexcusable failure to refuse entry to Masania`i as mandated by statute. *See* RESTATEMENT (SECOND) TORTS § 442B. We look upon the Country Club's statutory breach with grave disapprobation. Accordingly, we find that the actions of Schwenke, Tiumalu, and Alefosio does not excuse the Country Club from liability and that the Country Club's negligence in allowing entrance to Masania`i was a substantial factor in bringing about his injuries.

---

[2] There can little argument that there is a relationship between alcohol and aggression. The High Court's criminal case files reveal that the bulk of violent crimes committed in the territory are alcohol-related, and that a significant number of aggravated assaults occur in bars or among drinking companions.

[3] These are factors that would clearly have been in the *Fono's* contemplation when it enacted A.S.C.A. § 27.0531(f), an enactment that provides some ameliorative measures to the territory's alcohol-related problems by imposing on liquor establishments the duty to, *inter alia*, refuse entry to intoxicated individuals.

Moreover, this community's alcohol per capita consumption is staggering, lending even more reason for alcohol related caution. According to the most current published statistics from the Research and Statistics Division, of the Economic Planning Development Office, the territory's population in 1995 was estimated at 56,000, while the value of its beer imports alone for the preceding year 1994 was given at $1.6 million. These statistics are even more striking when compared to our very minimal tourism industry. A mere 7,337 tourists visited the territory in 1995.

Therefore, we find that the Country Club is liable for its proportionate share of those injuries. We will address the apportionment of liability below.

## B. Robert Fairholt

■ Fairholt was initially charged with assault and battery, but was acquitted at the criminal trial. Masania`i has offered little evidence to suggest that Fairholt participated in the beating. Although some testimony was offered by Pau as to the possibility that Fairholt participated, several other witnesses testified that Fairholt was not a participant in the assault. The burden is upon Masania`i as plaintiff to prove by a preponderance of the evidence that Fairholt acted to cause a "harmful contact" with him. *See* RESTATEMENT (SECOND) TORTS § 13. He failed to meet that burden.

## C. Asuelu Tiumalu and Samoa Alefosio

■ Both Tiumalu and Alefosio failed to appear at trial. We take judicial notice of the court's records in CR Nos. 03-95 and 06-95 (Trial Div. 1995), in which these defendants were found guilty of assault and battery against Masania`i. We find sufficient evidence presented at trial to enter a default civil judgment against these two defendants for committing battery upon Masania`i. *See* RESTATEMENT (SECOND) TORTS § 13.

## D. Comparative Fault

■ In this jurisdiction, contributory negligence is not a bar to recovery in actions brought for personal injuries. *See* A.S.C.A. § 43.5101. Rather, damages *shall* be diminished by the court in proportion to the amount of negligence attributable to the person injured. *Id.* (emphasis added). Substantial evidence was presented to suggest that Masania`i's own actions contributed to his injuries. Masania`i voluntarily consumed an inordinate amount of alcohol. He drove his automobile while intoxicated, went to the Country Club, and while there, engaged in loud, obnoxious and incendiary conduct. At some point, Masania`i made a highly offensive comment to Fairholt's niece, in the presence of Fairholt. This remark incited a reaction and instigated the subsequent altercation.

As we stated in our Order on the Motion to Dismiss, CA No. 121-95, slip op. at 6 (Trial Div. March 4, 1997), we believe that a person who voluntarily consumes alcohol to the point of intoxication is at least partially responsible for his own injuries. Although we obviously do not believe that Masania`i deserved the injuries that he received or that violence is the appropriate reaction to offensive language, we do believe that Masania`i's own actions contributed to his injuries and must hold

him accountable for his actions at least to some extent.

E. Liability

We find that the battery by Schwenke, Alefosio, and Tiumalu, while not the superseding cause of Masania`i's injuries, was the principal cause of his harm. Since Schwenke is now deceased and his estate was not joined in this action, we hold that Alefosio and Tiumalu are jointly and severally liable for 50 percent of the damages sustained by Masania`i.

We hold that Masania`i's own actions contributed to the cause of his injuries by 25 percent.

We find that the Country Club's breach of its statutory duty under A.S.C.A. § 27.0531(f) reflected 25 percent of the cause of Masania`i's injuries.

F. Damages

Masania`i claims he has suffered substantial injuries and continuing damages. Overwhelming evidence shows that Masania`i indeed sustained substantial injuries and continues to suffer as a result of those injuries. Prior to his injuries, Masania`i was a healthy 42-year-old athletic person. He had had 10 years of employment with the Department of Public Safety having made the rank of Watch Commander within the department's Marine Patrol Division. Masania`i is reduced to a pathetic figure beset by severe bouts of melancholy because his injuries have left him debilitated: partially paralyzed, and bereft of sensory faculties, motor skills and muscular control.

The head trauma sustained from the beating resulted in the loss of his visual acuity, blurring of his sight, and "tunnel vision," the substantial constriction of one's field of vision. Moreover, he has lost his spatial judgment, leaving him prone to bumping into things. Nerve damage from shattered bone fragments in his face has resulted in facial paralysis and the loss of his sense of taste and smell. Masania`i is also unable to close his eyelids properly, which required his undergoing a surgical insertion of gold weights in his eyelids. He now has to continuously use eye drops (as artificial tears) to lubricate his eyes. He has difficulty speaking and eating, because he has lost some control of his mandibular muscles. Consequently, he has difficulty in not only chewing his food but even keeping it in his mouth. This has also left him facially disfigured, a source of constant embarrassment to him to the extent that he avoids contact with other people. He also suffers post-traumatic hearing impairment, tinnitus, severe headaches, and bouts of dizziness.

## 1. Future Wages

Masania'i is permanently disabled economically. We find Mr. Daniel R. King's, J.D., C.P.A. projections of plaintiff's lost future earnings to be reasonable. We accordingly find that plaintiff's projected lost wages from the date of his injury through the date of his expected retirement at age 65 are $288,527.

In addition, the discounted present value of plaintiff's projected lost retirement benefits from the date of his retirement at age 65 over his projected life span of 82.6 years[4] reduced by the amount of medical retirement benefits that he is due to receive is $31,468.00.

Therefore, total lost wages and retirement benefits that the plaintiff is owed as a result of his injuries are $317,995.

## 2. General Damages

In consideration of plaintiff's past and present circumstances, his bleak prognosis, uncertain future, and his multiple debilitating injuries, we fix general damages, including pain and suffering, in the amount of $100,000.

## 3. Punitive Damages Against Alefosio and Tiumalu

■ The majority of states hold that recovery of punitive or exemplary damages will not be denied merely because the wrongful act upon which the action is based may be or has been criminally punished. 22 AM. JUR. 2D, Damages § 757. The minority view would bar recovery on the basis of double jeopardy. *Id.* at § 758. American Samoa appears to have adopted the majority view. *See Newton v. Taleka*, 30 A.S.R.2d 86, 89 (Trial Div. 1996). There the court noted:

> [P]unitive damages are principally awarded for the sake of example and by way of punishment. Viewed from this perspective when a defendant has been criminally prosecuted

---

[4] The Country Club argues that the life expectancy for a Polynesian man is lower than the life expectancy for a Caucasian man. In 1980, the life expectancy for a Samoan was 75.3 years. Vai Filiga and Michael J. Levin, *Population Profile of American Samoa (1980 census)* p. 43 (August 1988). We have no current updated information regarding the life expectancy of a Samoan male. Since defendant failed to proffer such evidence, we can only look to the testimony of plaintiff's expert on this issue. Although we can imagine that a Samoan male's life expectancy is less then 82.6 years, we are without evidence to support this intuition.

and sentenced, punitive damages are not unreasonable double punishment.

*Id.* (Citations omitted). Punitive or exemplary damages are awarded in addition to full compensation to punish the defendant and deter him and others from similar future misconduct. *Id.* In addition though, there must exist circumstances of aggravation or outrage which includes "malicious conduct." *Letuli v. Lei*, 21 A.S.R.2d 77, 86 (Land & Titles Div. 86 1991). "'Malice' includes conduct which is intended to cause injury; or which is despicable by nature, that is, blatantly vile or loathsome to ordinary decent people, and carried on with willful and conscious disregard for the rights or safety of others." *Id.*

 The beating plaintiff suffered at the hands of Schwenke, Alefosio, and Tiumalu exhibited a callous disregard for the value of human life. Indeed, these defendants' actions would have ended in death had it not been for the intervention of Kisena and others. The actions of these defendants · may be characterized as an abominable savagery and cowardice that shocks the conscience. Vitale the security guard openly wept on the stand as he recounted in disbelief the sheer horror of the evening's events that he witnessed in the Country Club's parking lot.

We conclude that punitive or exemplary damages against Alefosio and Tiumalu are appropriate and accordingly award such damages in the amount of $100,000.

## Conclusion

Defendants Alefosio and Tiumalu are jointly and severally liable for 50 percent of all damages as follows: $158,997 for future earnings, $50,000 for general damages including pain and suffering and $100,000 in punitive damages. Total damages being $308,997.

Defendants Bill and Apoua Tedrick d.b.a. the Country Club are liable for 25 percent of the damages as follows: $79,499 for future wages and $25,000.00 for pain and suffering, damages which total $104,499.

Judgment will enter accordingly.

It is so ordered.