No. 126,732

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRENDA ZARAGOZA,
*Appellant*,

v.

BOARD OF JOHNSON COUNTY COMMISSIONERS,
*Appellee*.

SYLLABUS BY THE COURT

1.

The recreational use exception to the Kansas Tort Claims Act, K.S.A. 75-6101 et seq., is not limited to outdoor areas or to areas intended for physical activity.

2.

The recreational use exception to the Kansas Tort Claims Act depends on the character of the property in question and not the activity performed at any given time; the plain wording of the statute only requires that the property be intended or permitted to be used for recreational purposes, not that the injury occur as the result of recreational activity.

3.

Immunity under K.S.A. 75-6104(o) extends to a parking lot integral to public property intended or permitted to be used as a park, playground, or open area for recreational purposes, including a library.

1

4.

To constitute wantonness the act must indicate a realization of the imminence of danger and a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act.

Appeal from Johnson District Court; RHONDA K. MASON, judge. Oral argument held April 9, 2024. Opinion filed June 21, 2024. Affirmed.

*Richard W. Morefield, Jr.*, of Morefield Speicher Bachman, LC, of Overland Park, for appellant.

*Andrew D. Holder*, of Fisher, Patterson, Sayler & Smith, LLP, of Overland Park, for appellee.

Before BRUNS, P.J., GARDNER and ISHERWOOD, JJ.

GARDNER, J.: Brenda Zaragoza fell in the parking lot of the Monticello Branch of the Johnson County Library when she stepped off the curb onto a parking surface sloped toward a drain. As a result, she broke her knee, ankle, and heel. Zaragoza sued the Johnson County Board of Commissioners (the County), alleging that her injuries were caused by the County's negligence in creating and maintaining a dangerous condition in the library parking lot. The Johnson County District Court entered summary judgment for the County, holding that the library and its parking lot had recreational use immunity under K.S.A. 75-6104(o) and that Zaragoza did not sufficiently plead or prove gross and wanton negligence, as is necessary to defeat immunity. The district court also denied Zaragoza's motion to file an amended petition adding gross and wanton negligence. Zaragoza appeals, but after carefully considering the record, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Zaragoza is a Johnson County resident who has visited the Monticello Branch of the library roughly once or twice a month since it opened in 2018. When visiting, she drives to the library and parks in its adjacent parking lot. When the library first opened, all the curbs were unpainted. But patrons complained that they were having trouble distinguishing the step down from the sidewalk's curb to the parking lot in front of the building, so before Zaragoza's fall, the curbs by the library's entrance were painted yellow. The curbs in the rest of the parking lot remained unpainted.

On July 18, 2020, Zaragoza drove to the library and arrived around 9 a.m. She borrowed some books and movies from the library and then left, walking along a paved sidewalk that she had not taken before. As she neared the parking lot, she placed one foot in a mulch bed next to the sidewalk, then stepped down into the parking lot with her other foot. That foot landed on a downward slope leading toward the storm drain which she had not anticipated, causing her to lose her balance and fall. As a result, she broke her knee, ankle, and heel, which required surgery and then time at a rehabilitation center.

Zaragoza sued the County for premises liability. She alleged that the County's "failure and/or refusal to remedy the dangerous condition it created, and its failure to provide patrons with any notice, warning, barrier or barricade of the dangerous condition, constituted a breach of Defendant Board's duty of reasonable care owed to patrons of Defendant Board's library, and this constitutes negligence." The County's answer asserted the affirmative defense that Zaragoza's claims are barred by the Kansas Tort Claims Act (KTCA).

3

*Facts from Discovery*

The library branch manager's affidavit states that between August 2018 and June 2020 about 313,500 people passed through the library's doors. The library's branch manager reviewed every incident report prepared at the library from the date it opened in August 2018 through January 2023, and found no record of any other person falling where Zaragoza fell or any record of any other person falling in the parking lot at or near a storm drain. The library tracks only reported injuries. He testified that no recreational activity was occurring in the library's parking lot on the day of Zaragoza's fall.

Georgia Sizemore approved the library branch's plans on behalf of the county, and she was deposed as the County's corporate representative. In requests for admissions, the County had stated that the yellow paint on the library's front curb was unrelated to safety and signified no-parking zones. But in her deposition, when she was asked why the curb in front of the library was painted yellow but the curb near the drain where Zaragoza fell was not, regarding the painted front curb, she responded:

> "I remember people saying that people were walking off that step, that curb step, without realizing there was a step there because the concrete, there wasn't enough differential. Fresh concrete, it's really hard to tell that curb area, and I'm experiencing that as I get older, so I understand that. So I recall—I believe [the architectural project manager and library branch manager] worked up to stripe that, to try to draw attention to the situation so people didn't step off it accidentally."

She agreed it would have been feasible to paint the curb yellow where Zaragoza fell but said it was more likely a pedestrian would have seen the slope where she fell unlike near the library's entrance where the change from curb to parking lot was not "conspicuous enough" for "some people who might be distracted on their devices." She agreed that the slope might not be conspicuous if there were a car parked in the space.

4

Sizemore also testified that the original design plans called for a 24-inch-tall plant to be placed in the mulched area where Zaragoza fell and the plans did not depict the top of the storm drain there. She "imagin[ed] there was an adjustment made in the field during construction." She stated that there could have been a plant there when the library opened that had since died, but she did not know why there was no plant in the mulch bed on the date Zaragoza fell. She agreed that a plant there would have "basically prevented somebody from cutting the sidewalk and stepping into that parking space" that Zaragoza stepped into just before she fell.

Zaragoza designated Dr. Claudia Ziegler Acemyan as a human factors expert. Acemyan testified that the slope of the parking lot was an intentional design choice to direct ground water toward the storm drain. According to her, the library should have erected a barrier or guard rail in front of the sloped area, or used some sort of warning communication, like striping, messaging, or signage, to warn people about the slope. She believed an object, such as the plant on the original plans but not present when Zaragoza fell, would have prevented Zaragoza's injuries.

The County designated Laurence Fehner, a professional engineer, as one of its two experts. Fehner reviewed the construction documents associated with the library and concluded that the parking area, sidewalks, curbs, curb inlets, and walkway areas in question were all constructed in conformity with the construction drawings. Fehner stated that neither the construction drawings nor the City of Shawnee's building codes required the curbs to be marked. The County's other expert testified that when the County identifies an unreasonable hazard, it should mitigate that hazard before someone gets hurt.

*The Summary Judgment Motions and Ruling*

After discovery, the County moved for summary judgment, asserting that the suit was barred by recreational use immunity under K.S.A. 75-6104(o) of the KTCA, K.S.A. 75-6101 et seq. It also asserted that Zaragoza did not plead and could not prove gross and wanton negligence.

Zaragoza opposed the motion and moved the same day for leave to file an amended petition. She argued that no evidence showed that the library was being used for recreational purposes at the time of or before her fall, so recreational use immunity could not apply. And she argued that facts recently admitted by the County showed its gross and wanton negligence and this negligence was the proximate cause of her injuries, defeating recreational use immunity.

The County replied that Zaragoza's petition claimed only ordinary negligence and did not allege gross and wanton negligence. And regardless of whether Zaragoza had pleaded or could amend to plead a claim for gross and wanton negligence, the County was entitled to summary judgment because no evidence supports such a claim.

After a hearing on both motions, the district court granted the County's motion for summary judgment and denied Zaragoza's motion to file an amended petition. The district court found that the library and its parking lot had recreational use immunity under K.S.A. 75-6104(o), which barred Zaragoza's ordinary negligence claim. It then found that this immunity was not defeated by gross and wanton negligence, as Zaragoza had not asserted that claim in her petition and lacked the facts to prove it. The district court also denied Zaragoza's motion to file an amended petition as futile and untimely.

Zaragoza timely appeals, challenging each of the conclusions above.

## I. DID THE DISTRICT COURT ERR IN GRANTING THE COUNTY'S MOTION FOR SUMMARY JUDGMENT?

We first review the legal principles that apply to the district court's entry of summary judgment.

*Summary Judgment and Our Standard of Review*

After the parties to a civil action have had a chance to discover evidence, but before their case goes to trial, a party may move for summary judgment. K.S.A. 2023 Supp. 60-256(a). The party seeking summary judgment must show, based on the evidence, that there is no dispute about any significant fact and that they are entitled to judgment as a matter of law. *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019). So the County must show that there is nothing for a jury or a trial judge sitting as fact-finder to decide that would make any difference to the outcome of the case. See *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 24, 378 P.3d 1090 (2016).

Appellate courts review a trial court's ruling on a motion for summary judgment de novo, meaning we are unconstrained by the lower court's ruling because we are in the same position as the lower court. We must view the facts in the light most favorable to the party opposing summary judgment. If reasonable minds could disagree about the conclusions to be drawn from the evidence—if there is a genuine issue about a material fact—summary judgment is inappropriate. *John Doe v. M.J.*, 315 Kan. 310, 313, 508 P.3d 368 (2022). So a disputed question of fact which is immaterial to the issue does not preclude summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013).

Resolution of this appeal also requires statutory interpretation, which is a question of law over which we have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

*The KTCA and Recreational Use Immunity Generally*

"Because at common law, the state or national government could not be sued, negligence claims against the government are allowed only as provided by statute." *Muxlow v. City of Topeka*, No. 117,428, 2018 WL 2999618, at *2 (Kan. App. 2018) (unpublished opinion). The KTCA waives Kansas' sovereign immunity and statutorily permits negligence claims against the government, but it also provides several exceptions to a governmental entity's liability. K.S.A. 75-6103(a). The parties do not dispute that this suit is subject to the KTCA because the County is clearly a governmental entity, as defined by the KTCA. See K.S.A. 75-6102(b), (c).

Under the KTCA, government liability is the rule and immunity is the exception. Accordingly, governmental entities have the burden to prove they fall within one of the KTCA's listed exceptions from liability. *Keiswetter v. State*, 304 Kan. 362, Syl. ¶ 3, 366, 373 P.3d 803 (2016). One of these exceptions is "recreational use immunity." See K.S.A. 75-6104(o). This exception is now codified under K.S.A. 2023 Supp. 75-6104(a)(15), but because K.S.A. 75-6104(o) was in effect at the time of the district court's ruling, we cite to that subsection.

Under this exception, an individual cannot bring a claim against the government "for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury." K.S.A. 75-6104(o).

The legislative purpose of this recreational-use exception is to encourage the development and maintenance of parks, playgrounds, and other recreational areas.

> "The purpose of K.S.A. 75-6104(o) is to provide immunity to a governmental entity when it might normally be liable for damages which are the result of ordinary negligence. This encourages governmental entities to build recreational facilities for the benefit of the public without fear that they will be unable to fund them because of the high cost of litigation. The benefit to the public is enormous. The public benefits from having facilities in which to play such recreational activities as basketball, softball, or football, often at a minimal cost and sometimes at no cost. The public benefits from having a place to meet with others in its community." *Jackson v. U.S.D. 259*, 268 Kan. 319, 331, 995 P.2d 844 (2000).

We read this recreational use immunity statute broadly to accomplish this legislative purpose. *Poston v. U.S.D. No. 387*, 286 Kan. 809, 813, 189 P.3d 517 (2008*)*; *Lane v. Atchison Heritage Conf. Center, Inc.*, 283 Kan. 439, 445, 153 P.3d 541 (2007) (stating recreational use immunity statute "should be read broadly, and Kansas courts should not impose additional hurdles to immunity that are not specifically contained in the statute").

A. *The library is entitled to recreational use immunity.*

Zaragoza challenges the district court's holding that K.S.A. 75-6104(o)'s recreational use immunity applies to the library and its parking lot, barring her claim of ordinary negligence. Zaragoza argues that the library does not qualify for recreational use immunity because the County failed to establish that the library is an open area intended or permitted to be used for nonincidental recreational purposes at the time of Zaragoza's injuries. In response, the County argues that the library qualifies for recreational use immunity because its core functions and additional programing are recreational.

9

To qualify for recreational use immunity, the property must be (1) public, and (2) intended or permitted to be used for recreational purposes. *Poston*, 286 Kan. at 813. The parties do not dispute that the library is public. K.S.A. 75-6104, which contains the recreational use immunity exception to liability, applies to governmental entities, as does the KTCA itself. K.S.A. 75-6102(c). The first requirement for recreational use immunity is thus met.

It is the second requirement that is disputed—whether the property is intended or permitted to be used for recreational purposes. Immunity "depends on the character of the property in question and not the activity performed at any given time. The plain wording of the statute only requires that the property be intended or permitted to be used for recreational purposes, not that the injury occur as the result of recreational activity." *Barrett v. U.S.D. No. 259*, 272 Kan. 250, 257, 32 P.3d 1156 (2001). See *Jackson*, 268 Kan. at 326 (same). When that exception is not met, the government may be liable. Thus, in *Gonzales v. Kansas Dept. of Corrections*, No. 93,135, 2005 WL 824181, at *2 (Kan. App. 2005) (unpublished opinion), a panel of this court held that the visitation area of Lansing Correctional Facility, although it looked like a park, was not intended for recreational purposes because "family members and friends do not visit correctional facilities for recreational purposes. One does not go to the prison to have a good time."

At first blush, a library may seem to be educational rather than recreational in its intended purpose and use. Yet our cases have applied recreational use immunity to locations that are not facially recreational. See *Lane*, 283 Kan. at 440 (recreational use immunity barred suit by musician injured by falling on loading dock of city's conference center); *Boaldin v. University of Kansas*, 242 Kan. 288, 291, 747 P.2d 811 (1987) (recreational use immunity barred suit by plaintiff injured while sledding on hill at the University of Kansas).

In support of its argument that this library is used for recreational purposes, the County points to the library's core services and its supplemental offerings. Determining how undisputed facts apply to K.S.A. 75-6104(o) is a question of law. See *Lane*, 283 Kan. at 443. The parties do not dispute that the library's core service is allowing patrons to read and borrow books and other media.

Borrowing a definition from the Illinois Appellate Court, the Kansas Supreme Court has defined "recreation" as

> "'refreshment of the strength and spirits after toil: DIVERSION, PLAY.' Webster's Third New International Dictionary 1899 (1986). Play "suggests an opposition to work; it implies activity, often strenuous, but emphasizes the absence of any aim other than amusement, diversion, or enjoyment." Webster's Third New International Dictionary 1737 (1986).'" *Jackson*, 268 Kan. at 330 (quoting *Ozuk v. River Grove Board of Education*, 281 Ill. App. 3d 239, 243-44, 666 N.E.2d 687 [1996]).

A more recent definition of "recreation" is "refreshment in body or mind, as after work, by some form of play, amusement, or relaxation" and "any form of play, amusement, or relaxation used for this purpose, as games, sports, or hobbies." Webster's New World College Dictionary 1215 (5th ed. 2018).

Zaragoza does not argue that the library's core functions are not recreational. Instead, she argues that a library is not an "open area" as used in K.S.A. 75-6104(o) (barring suits "for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes"). But the immunity provided under this statute is not limited to outdoor areas. As our Supreme Court stated: "It defies common sense to hold that K.S.A. 75-6104(o) provides immunity from injuries which occur on a football field, a baseball field, a track and field area, and a sledding area, but not on an indoor basketball court solely because it is indoors." *Jackson*,

11

268 Kan. at 325; see *Wright v. U.S.D. No. 379*, 28 Kan. App. 2d 177, 180, 14 P.3d 437 (2000). The library is an area open to the public.

And courts have not limited the phrase "open area for recreational purposes" to areas intended for physical activity. See K.S.A. 75-6104(o). Recreational use immunity has been applied to non-stereotypical recreational spaces such as a school commons area near the gymnasium, a conference center, a university stadium's bathroom, and a university's indoor theater. See *Poston*, 286 Kan. at 819-20 (applying recreational use immunity to school's commons area adjoining the gymnasium when a father was injured while picking his child up from practice after school); *Lane*, 283 Kan. at 440 (applying recreational use immunity to city's conference center when musician hired for a public dance slipped and fell on ice on the loading dock); *Wilson v. Kansas State University*, 273 Kan. 584, 590, 44 P.3d 454 (2002) (applying recreational use immunity to the state football stadium's bathroom where a spectator was injured by chemical burns from the toilet seat); *Tullis v. Pittsburg State Univ.*, 28 Kan. App. 2d 347, 350-51, 16 P.3d 971 (2000) (applying recreational use immunity to state university's indoor theater when an actress was injured by an accidental stabbing during a play).

A property is not bound to only one use—educational or recreational. This is shown in *Jackson.* There, our Supreme Court found that using a gymnasium for compulsory P.E. classes was an educational purpose, but if the gymnasium were also used for recreational, noncompulsory activities, then recreational use immunity would apply as long as the recreational use was "'more than incidental.'" 268 Kan. at 321-22, 330. And on remand, recreational use immunity applied to the school gymnasium because the facts showed that it was used outside school hours for basketball tournaments, YMCA-sponsored activities, and other community activities that were "beyond incidental." *Jackson v. U.S.D. No. 259*, 29 Kan. App. 2d 826, 832, 31 P.3d 989 (2001); see also *Marks v. Kansas Bd. of Regents*, No. 96,162, 2007 WL 1461381, at *3 (Kan. App. 2007)

12

(unpublished opinion) (holding noncompulsory extracurricular activities are recreational under KTCA).

Research has revealed no Kansas cases designating a library as a recreational space. But, "[t]here must always be a 'first case.'" *Jackson*, 268 Kan. at 325. This library's core services are noncompulsory, as no one is required to use its services or to check out its materials. Although some may use the library for educational purposes, others may use the library's basic services for recreational purposes. "[T]he correct test to be applied under K.S.A. 2006 Supp. 75-6104(o) is 'whether the property has been used for recreational purposes in the past or whether recreation has been encouraged.'" *Lane*, 283 Kan. at 452 (quoting *Jackson*, 268 Kan. at 330). *Lane* reversed a Kansas Court of Appeals decision that the primary use of the property had to be recreational. 283 Kan. at 447. Thus the recreational use needs to be more than incidental, but need not be the primary use of the property.

The library's core functions of allowing patrons to read and borrow books and other media meet that test. The library offers materials that facilitate the recreational hobbies of reading and watching movies. The items that patrons check out serve as a form of refreshment and amusement. Because the library's core services are recreational, recreational use immunity applies.

But even if the library's core services were not recreational, the library provides other services and offerings to the public. Zaragoza does not dispute that these offerings as stated in the branch manager's affidavit are recreational: art installations and sculptures by local artists; a dedicated story room for children, which is open to the public when not in use; an outdoor children's storywalk; and community events such as toddler and family story times, tabletop gaming nights, book clubs, events that allow children to read stories to therapy dogs, an after-hours mystery-solving event for teens, and yoga for preschoolers. Zaragoza does not contend that these offerings are merely

13

incidental to the library's core functions. Zaragoza asserts solely that no evidence shows that this kind of programing was ongoing at the time of her injury, as the branch manager spoke only to the library's offerings on the date of his affidavit, or his deposition on January 6, 2023—years after her injury.

The affidavit from the library's branch manager states that he has been the library's branch manager since it opened, and he has personal knowledge that the library offers the programs, events, and activities we noted above. And in his deposition he similarly testified that the library puts on various programs such as performances, story times, outdoor programming, outdoor story times on the terrace, and tabletop gaming at the library.

Zaragoza argues that because the branch manager's affidavit was in the present tense, it fails to show that the library offered such additional programming at the time of her fall. But his deposition clarifies that these were standard programs at the library. When asked about the factual basis for the library's claim of immunity, he replied:

"A.  So for that one, Johnson County Library provides programming such as we have performers that come. We've had—we have tabletop programming. We have story times, outdoor programming. We've had outdoor story times on the terrace, just various different programming that we—that we have on site.

"Q.  Are you suggesting that Ms. Zaragoza was making a recreational use of the parking lot when she was injured?

"A.  I'm not sure—I'm not sure if I'm suggesting that, but I'm just saying that that's what we—we do have those things.

"Q.  Okay. Do you have a factual basis for believing that Ms. Zaragoza was engaged in recreation when she was walking from the library building to her car?

"A.  I'm not sure that I'm claiming that. I'm just kind of stating that's what we provide at the library.

. . . .

"Q.  Are you talking about inside the library building?

14

"A. Inside the library building, and we have used—we have used the parking lot. Not the parking—we have used the sidewalks to do like some various different programming, such as when we did the opening of Monticello, we had a poem that we dedicated out there, a time capsule out there on the sidewalks as well, and then with the extent of the exterior, we have used the terrace to do story times.

"Q. That wasn't going on on the date that Ms. Zaragoza was injured though, was it?

"A. The activities outside were not going on."

It is a reasonable inference from this testimony that the library's indoor activities that the branch manager earlier referenced were "going on"—were ongoing or continual, meaning that kind of activity was offered before and at the time of Zaragoza's fall. Given that testimony, Zaragoza must come forward with "something of evidentiary value to establish a disputed material fact." *Hare v. Wendler*, 263 Kan. 434, 444, 949 P.2d 1141 (1997). Zaragoza does not point to any evidence from which a reasonable trier of fact could find that the library's additional programming began only after her fall.

But even if the library offered certain programs only after Zaragoza's injuries, the inquiry is whether "the property was *intended* or permitted to be used for recreational purposes." (Emphasis added.) *Jackson*, 268 Kan. at 329. The branch manager identified several spaces—the children's storywalk area and the story room—which were constructed and intended for recreational purposes. That is sufficient, as Zaragoza does not contend that the library's recreational offerings are merely incidental to its educational functions.

Uncontroverted evidence establishes that the library was intended to be, has been, and continues to be used for recreational purposes, qualifying the library for recreational use immunity.

B. *The library's recreational use immunity extends to the parking lot.*

Zaragoza next argues that even if the library qualifies for recreational use immunity, that immunity cannot extend to the library's parking lot because it was not being used for a recreational purpose when she fell and is not integral to the library.

Recreational use immunity "is not limited to areas expressly designated as recreational." *Nichols v. U.S.D. No. 400*, 246 Kan. 93, 97, 785 P.2d 986 (1990). "[F]acilities integral to the functioning of a public and open area used for recreational purposes are also covered by the recreational use exception, despite possessing a nonrecreational character in themselves." *Lane v. Atchison Heritage Conf. Center, Inc.*, 35 Kan. App. 2d 838, 845, 134 P.3d 683 (2006), *rev'd on other grounds* 283 Kan. 439, 153 P.3d 541 (2007). Our Supreme Court observed that a facility must be viewed "collectively" to determine whether it is used for recreational purposes, noting that the restrooms in *Wilson* were immune from liability because they were "'necessarily connected'" to property that had a recreational use. *Lane*, 283 Kan. at 446 (citing *Wilson*, 273 Kan. at 590); see also *Nichols*, 246 Kan. at 94 (recreational use exception applied to "grassy swale or waterway" near public school's football field). See *Poston*, 286 Kan. at 819.

We find guidance in *Wilson*. In that case, a woman sued Kansas State University for burns she suffered from chemicals on the toilet seat in the bathroom inside the University's football stadium. Wilson argued that the bathroom served no recreational purpose, so the University was not exempt from liability under recreational use immunity. The Kansas Supreme Court disagreed, finding the statute does not limit the exception to the portion of the property used for recreation:

> "The plain language of the recreational use exception reaches the restrooms, not
> because of what the statutory language provides, but because of what the language does

16

not provide. K.S.A. 2001 Supp. 75-6104(o) contains the language 'any public property intended or permitted to be used as a park, playground, or open area for recreational purposes,' and is not limited to '*any portion* of public property utilized for recreational activities.' Further, the use of 'any' to modify 'public property' shows an intent on the part of the legislature to establish a broad application of recreational use immunity." 273 Kan. at 591-92.

The court held the bathrooms were not incidentally connected to the stadium but were necessary and connected to the stadium by design. The recreational use immunity extended to the bathrooms because they were necessarily connected to the property. 273 Kan. at 590 ("A facility servicing large numbers of people must include restrooms."). Similarly, a library branch in Johnson County serves large numbers of people and must have a parking lot.

Other cases apply similar logic. In *Nichols*, a football player was injured while running across a grassy swale between the practice field and the locker room. The Kansas Supreme Court held that recreational use immunity applied, and "is not limited to areas expressly designated as recreational." 246 Kan. at 97. In *Dye v. Shawnee Mission School District*, No. 98,379, 2008 WL 2369847, at *1 (Kan. App. 2008) (unpublished opinion), a mother fell into a hole near a sewer inlet while walking from a soccer field through a grassy area to pick up her child. Relying on *Wilson* and *Nichols*, a panel of this court affirmed summary judgment for the school district based on recreational use immunity, which applies "to property integral to or near a recreational facility." 2008 WL 2369847, at *2-3; see also *Robison v. State*, 30 Kan. App. 2d 476, 479, 43 P.3d 821 (2002) (relying on *Nichols* to reject plaintiff's argument that the hallway in which the plaintiff fell, near the swimming pool area, did not qualify as a recreational area for purposes of recreational use immunity).

Similarly, in *Stone v. City of La Cygne*, No. 88,996, 2003 WL 1961969, at *1 (Kan. App. 2003) (unpublished opinion), the plaintiff was injured in a shed which housed

17

machines, chemicals, and water cleaner for a nearby public swimming pool. The plaintiff argued that recreational use immunity did not apply because the shed was not a recreational area and was not open to the public, yet a panel of this court disagreed. Relying on *Wilson*, that panel held

> "the machines and chemicals housed by the pool shed facilitate the recreational use of the pool. The pool could not be used at all if the water were not cleaned. Consequently, the pool shed is an integral part of the recreational use intended by the development of the city pool. Moreover, unlike restrooms attached to a recreational facility, the pool shed possesses no viable purpose apart from the swimming pool; its only function is to facilitate the use of the recreational property." 2003 WL 1961969, at *2.

Zaragoza conceded to the district court that the library parking lot is integrally connected to the library's educational use, but she contends that the parking lot is not integrally connected to its recreational use. But it defies logic to assert that the library's parking lot is integral to some of the library's offerings, but not others. The library's parking lot serves as the primary location for patrons to park their vehicles while visiting the library, regardless of their purpose in going there. See K.S.A. 60-409(a) (permitting court to take judicial notice, without request from either party, of specific facts and propositions of generalized knowledge that are so universally known that they cannot reasonably be the subject of dispute). And the parking lot has no viable purpose apart from the library; its only function is to facilitate the use of the library, be it recreational or educational.

Based on these well-reasoned cases, we find that the library's parking lot is integral to the library just as bathrooms are to stadiums, mechanical rooms are to pools, loading docks are to conference centers, and walkways to and from recreational areas are to those recreational areas. See *Wilson*, 273 Kan. at 591-92 (stadium bathrooms); *Stone*, 2003 WL 1961969, at *2 (pool mechanical room); *Lane*, 35 Kan. App. 2d at 846

18

(conference center loading dock); *Nichols*, 246 Kan. at 97 (walkway to recreational area); *Robison*, 30 Kan. App. 2d at 479 (same); *Dye*, 2008 WL 2369847, at *3 (same).

In support of her argument that the library's recreational use immunity does not extend to its parking lot, Zaragoza relies on *Cullison v. City of Salina*, No. 114,571, 2016 WL 3031283, at *1 (Kan. App. 2016) (unpublished opinion). There, a child was injured by stepping on an electrically charged junction box located "at the mouth of an entrance to [the 'pocket park'] but in an area that corresponds to part of the sidewalk that extends down [a public street] in front of the stores." 2016 WL 3031283, at *4. The junction box provided electricity to decorative lights in the park and to electrical outlets that park visitors could use for their convenience. 2016 WL 3031283, at *5-6. The *Cullison* panel held that summary judgment was not proper because a jury could have found that these uses did not make the junction box integral to the park; the park could be used during daylight and twilight without the decorative lights and at any time without the electrical outlets. 2016 WL 3031283, at *5-6.

We find *Cullison* distinguishable. Zaragoza testified that every time she visited the library she drove there and parked in the library's parking lot. While public transportation may be available for some libraries and some patrons may walk, the parking lot is integral to this branch because patrons drive to it and need a place to park their vehicles when visiting it, as did Zaragoza. The parking lot increases the library's usefulness because more patrons are able to use the public property, which allows recreational use immunity to extend to the parking lot. See *Poston*, 286 Kan. at 815-16; *Wilson*, 273 Kan. at 589.

Zaragoza also relies on *Patterson v. Cowley County, Kansas*, 53 Kan. App. 2d 442, 471, 388 P.3d 923 (2017), *aff'd* 307 Kan. 616, 413 P.3d 432 (2018). There, two people drowned in a river after driving off an unpaved road that ran through a wildlife preserve before abruptly ending at a riverbank. The *Patterson* panel rejected recreational use

19

immunity because the unpaved road had existed for over 100 years before the wildlife preserve had been created and it was not the only road by which to access the wildlife area. 52 Kan. App. 2d at 471-72. *Patterson* is not factually applicable here. Unlike the road there, which existed before the recreational area and was not the only means of access to it, the library's parking lot was designed and constructed in tandem with the library to support the library's function and its accessibility for patrons, and we have no evidence of any other parking area its patrons could use.

Zaragoza lastly argues that even if the parking lot is integral to the library, recreational use immunity applies only when recreational activities are in progress. We disagree, finding no authority for that proposition. Kansas courts have repeatedly held that there is no requirement under K.S.A. 75-6104(o) that an injury occur during a recreational activity for recreational use immunity to apply. See, e.g., *Jackson*, 268 Kan. 319, Syl. ¶ 6 ("The plain wording of K.S.A. 75-6104(o) only requires that the property be intended or permitted to be used for recreational purposes, not that the injury occur as the result of a recreational activity.").

The library's parking lot is integral to the library. Thus, the library's recreational use immunity extends to its parking lot, as the district court properly found.

C. *Gross and wanton negligence can defeat recreational use immunity.*

Assuming K.S.A. 75-6104(o)'s recreational use immunity applies to the library and its parking lot, Zaragoza argues that the district court still erred in granting summary judgment because she proved the County's gross and wanton negligence. She also argues that the district court made improper inferences for the County when finding no gross and wanton negligence was shown. But because we review the evidence without regard to the district court's findings, we need not address that argument separately.

20

We begin by reviewing the applicable law. Even though recreational use immunity applies, the County can still be liable for Zaragoza's injuries if the County "is guilty of gross and wanton negligence proximately causing such injury." K.S.A. 75-6104(o). The Kansas Supreme Court follows the dictionary definition of "gross" in the employment law context:

> "'[G]laringly noticeable usually because of inexcusable badness or objectionableness.' Webster's New Collegiate Dictionary 507 (1973). Black's Law Dictionary 702 (6th ed. 1990), defines 'gross' as '[o]ut of all measure; beyond allowance; flagrant; shameful; as a gross dereliction of duty, a gross injustice, gross carelessness, or negligence.'" *Jones v. Kansas State University*, 279 Kan. 128, 150, 106 P.3d 10 (2005).

We use that same definition in the context of recreational use immunity.

Wanton conduct "is distinct from negligence and differs in kind." *Bowman v. Doherty*, 235 Kan. 870, 876, 686 P.2d 112 (1984). The *Bowman* court elaborated that "[w]anton conduct is distinguished from a mere lack of due care by the fact that the actor realized the imminence of injury to others from his acts and refrained from taking steps to prevent the injury. This reckless disregard or complete indifference rises substantially beyond mere negligence." 235 Kan. at 876. Unlike simple negligence, "[w]anton conduct is established by the mental attitude of the wrongdoer rather than by the particular negligent acts." *Robison*, 30 Kan. App. 2d at 479 (citing *Friesen v. Chicago, Rock Island & Pacific Rld.*, 215 Kan. 316, 322, 524 P.2d 1141 [1974]). Wantonness requires both a realization of imminent danger and a "reckless disregard, indifference, and unconcern for probable consequences." 30 Kan. App. 2d at 479 (citing *Friesen*, 215 Kan. at 322).

To successfully show gross and wanton negligence, a plaintiff must demonstrate "something more than ordinary negligence but less than a willful act. [Wantonness] indicates a realization of the imminence of danger and a reckless disregard and indifference for the consequences." *Gruhin v. City of Overland Park*, 17 Kan. App. 2d

21

388, 392, 836 P.2d 1222 (1992). Because wantonness derives from "the mental attitude of the wrongdoer[,] . . . acts of omissions as well as acts of commission can be wanton." *Gould v. Taco Bell*, 239 Kan. 564, 572, 722 P.2d 511 (1986). "When the meanings of 'gross' and 'wanton' are placed into the words used in K.S.A. 75-6104(o), the burden on a plaintiff to establish liability is very high." Hesse & Burger, *Recreational Use Immunity: Play at Your Own Risk*, 77 J.K.B.A. 28, 33 (Feb. 2008).

To avoid summary judgment, a plaintiff must show that, based on the facts, reasonable persons could disagree that a defendant knew of existing conditions that would probably cause injury to another, yet acted or refused to act with reckless disregard as to whether that injury would occur. See *Reeves v. Carlson*, 266 Kan. 310, 314, 969 P.2d 252 (1998) (keys to finding gross and wanton negligence are knowledge of dangerous condition and indifference to consequences).

The first step in our analysis is the defendant's knowledge of the danger. Knowledge may be actual or constructive and can be established by direct or circumstantial evidence. See *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244-45 (10th Cir. 2009). The second step in the analysis is whether the defendant acted with reckless disregard or indifference to its probable consequences. 586 F.3d at 1244-45. When assessing if wanton conduct is established, the court must carefully apply both prongs of this test to the same alleged risk, whether that risk is described narrowly or broadly. See *Reeves*, 266 Kan. at 314.

> "In other words, if the first part of Kansas's two-part inquiry asks whether the defendant had knowledge of a broadly described dangerous condition, the second part of that inquiry must ask whether the defendant recklessly disregarded or was indifferent to the *same* broadly described risk." *Wagner*, 586 F.3d at 1245.

22

D. *Zaragoza's petition did not plead gross and wanton negligence.*

When granting summary judgment, the district court held that Zaragoza did not plead a claim for gross and wanton negligence and that, even if she had, no jury could find the County liable for gross and wanton negligence. On appeal, Zaragoza does not allege that she pleaded gross and wanton negligence; she argues that she pleaded that the County created a dangerous condition that caused her injuries, and that the County knew of that condition.

As the County points out, Zaragoza did not use the term "gross and wanton negligence" in her petition. But a plaintiff need not use these exact words—"[t]he test is whether the facts alleged disclosed the essential elements of wantonness." *Kniffen v. Hercules Powder Co.*, 164 Kan. 196, 209, 188 P.2d 980 (1948). Zaragoza argues that she impliedly pleaded gross and wanton conduct by alleging that the County was aware of the dangerous condition of its parking lot before her fall.

But gross and wanton conduct requires more than mere knowledge of a dangerous condition. It requires "'a realization of the imminence of danger and a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act.'" *Lee v. City of Fort Scott*, 238 Kan. 421, 423, 710 P.2d 689 (1985). Knowledge of a dangerous condition, alone, does not establish a legal duty that can support even an ordinary negligence claim. See *Manley v. Hallbauer*, 53 Kan. App. 2d 297, 307-08, 387 P.3d 185 (2016).

Having reviewed Zaragoza's petition, we agree that it did not plead gross and wanton negligence. She alleged that the County's "failure and/or refusal to remedy the dangerous condition it created, and its failure to provide patrons with any notice, warning, barrier or barricade of the dangerous condition, constituted a breach of Defendant Board's duty of reasonable care owed to patrons of Defendant Board's library,

23

and this constitutes negligence." In the petition, no allegation is made that the County realized an imminent danger or had a reckless disregard or a complete indifference or an unconcern for the probable consequences of its wrongful act. And it includes no other language or factual assertions that could put a reasonable defendant on notice of a claim for gross and wanton negligence.

Zaragoza's sole claim was for ordinary negligence from injuries suffered on property used for a recreational purpose. And "K.S.A. 75-6104(o) is a complete defense to actions where the plaintiff alleges only ordinary negligence." *Dunn v. U.S.D. 367*, 30 Kan. App. 2d 215, 225, 40 P.3d 315 (2002); see *Willard v. City of Kansas City*, 235 Kan. 655, 660, 681 P.2d 1067 (1984) ("[M]ere negligence on the part of the City, which was all that was alleged by the plaintiff in his pleadings, was insufficient to establish a basis for liability under the KTCA."); *Tullis*, 28 Kan. App. 2d at 351 (absence of gross and wanton negligence in the plaintiff's pleading rendered the university immune from liability under KTCA's recreational use immunity); see also *Molina v. Christensen*, 30 Kan. App. 2d 467, 474, 44 P.3d 1274 (2001) (same). Thus, K.S.A. 75-6104(o) bars Zaragoza's claim, and the district court did not err in granting the County's motion for summary judgment.

E. *The facts do not show gross and wanton negligence.*

But even if Zaragoza had pleaded gross and wanton negligence, no reasonable jury could find the County liable for it. Zaragoza argues that the County's decision to paint the curb elsewhere in the parking lot and its failure to plant a bush or other plant by the drain where she fell amounts to gross and wanton negligence. Yet to show gross and wanton negligence, Zaragoza had to show more—that the County knew or had reason to believe that the location, in its condition at the time, constituted a dangerous condition, and failed to address the danger. Zaragoza's theory of the case is that her fall was caused by the uneven slope of the pavement near the rainwater drain in the parking lot where she fell.

24

To survive summary judgment, she must proffer evidence that the government knew of that dangerous condition and chose not to address it. Yet Zaragoza has failed to do so.

At the time of Zaragoza's injury, the library branch had been open for nearly two years and over 300,000 people had passed through its doors. No evidence showed that any other patron had fallen in the parking lot because of the slope of a rainwater drain. Unlike in *Gruhin* and *Deaver*, no evidence suggests that the library knew of the existing danger, nor does evidence show prior insufficient or ineffective measures to address an existing danger that could reveal the County knew of the danger. In *Gruhin*, 17 Kan. App. 2d at 389, 393, the city knew of the hole and drew chalk around it to draw attention to it after someone fell into the hole a few weeks earlier. In *Deaver v. Board of Lyon County Comm'rs*, No. 110,547, 2015 WL 715909, at *1-4 (Kan. App. 2015) (unpublished opinion), the fair board altered the vehicles participating in the mud race and the track itself after a car participating in the mud race left the track. But here, no evidence shows that the County knew of the danger of the slope where Zaragoza fell.

Zaragoza relies on two facts to meet her burden:  The library had painted curbs yellow as a safety measure in other areas of the parking lot; and the library failed to install a plant in the mulch bed that she stepped in before stepping down onto the sloped parking lot.

It is undisputed that the curbs in front of the library were painted yellow at some point after the library opened. Those curbs were in areas specifically designated for pedestrians and were not landscaped areas. They were painted to help patrons differentiate the sidewalk from the parking lot which had similar color, making the step down from the sidewalk to the parking lot less obvious. This evidence would have been material if Zaragoza had fallen because she did not realize that she was stepping down from the curb or sidewalk to the parking lot. But the record shows that Zaragoza knew

25

she was stepping off the curb and into the parking lot, even though the curb was unpainted.

Zaragoza fell because she was not expecting the slope, not because she was not expecting to leave the sidewalk and step down into the parking lot. This is a different danger than the previously identified and remediated risk other library patrons experienced. To show gross and wanton negligence, the government entity must know about the precise hazard that caused the injury. Yet Zaragoza points to no evidence that the County knew this slope leading to the rainwater drain was a dangerous condition and then was indifferent towards it or refused to address it. And "[w]ithout knowledge of a dangerous condition, indifference to the consequences does not become a consideration." *Lanning v. Anderson*, 22 Kan. App. 2d 474, 481, 921 P.2d 813 (1996); see *Muxlow*, 2018 WL 2999618, at *1, 5.

Zaragoza also argues that an originally planned plant in the landscaping area she stepped into before falling would have prevented her fall, so its absence shows gross and wanton negligence. True, testimony shows that the plant would have discouraged patrons from stepping into the mulch bed and down into the parking lot by the drain. But no evidence suggests that the plant was planned for that purpose or that a plant would have made patrons aware of the drain's slope. No evidence suggests that the County knew that the plant was missing or that its absence posed any danger to library patrons. Yet both are necessary to show gross and wanton negligence, as this requires evidence of the mental attitude of the wrongdoer, not merely a negligent act. See *Robison*, 30 Kan. App. 2d at 479.

Because no evidence showed that the County knew of the danger that caused Zaragoza's injury yet failed to sufficiently address it, the district court correctly concluded Zaragoza failed to raise a material question of fact about the County's gross and wanton negligence.

F. *Did the district court improperly resolve facts in favor of the County?*

Throughout her brief, Zaragoza argues the district court made assumptions and inferences and improperly resolved factual issues in favor of the County. Even if we assume, without deciding, that the district court improperly resolved factual disputes in favor of the County when granting summary judgment, our standard of review owes no deference to the district court's findings, and our holdings are based on the uncontroverted facts determined after a review of the summary judgment motion, the response thereto, and the evidence. See *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009).

The only argument we have not already addressed is Zaragoza's assertion that the slope near the drain was inconspicuous. But the facts do not support that conclusion. True, the County's representative testified that it was more likely a pedestrian would have seen the slope instead of the flat difference closer to the library entrance where the change was not "conspicuous enough" for "some people who might be distracted on their devices." But that testimony addressed the inconspicuousness of the curb-to-parking lot transition near the library's entrance, not of the slope where Zaragoza fell. And Zaragoza's assertion that the slope where she fell was inconspicuous cuts against a showing that the library knew of its danger yet failed to address it, so it is immaterial.

Summary judgment for the County is warranted because recreational use immunity applies to the library, and by extension, to the parking lot and Zaragoza failed to show evidence of gross and wanton negligence to overcome the library's statutory immunity.

## II. DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING ZARAGOZA'S MOTION TO FILE AN AMENDED PETITION?

Finally, Zaragoza argues that the district court abused its discretion by denying her motion to amend her petition to add a claim of the library's gross and wanton negligence.

The district court denied this motion as futile and untimely:

> "[Zaragoza] seeks to amend to add facts that she claims support gross negligence. The Court finds the facts that [Zaragoza] seeks to add via amendment do not rise to gross negligence, and thus the motion to amend is denied as futile. Even if the facts did support gross negligence, the motion to amend would be denied because the motion to amend deadline had long passed, trial is imminent, and the motion appears to be in response to arguments properly raised by [the County] at summary judgment."

We review the district court's denial of a motion to amend a petition under K.S.A. 2023 Supp. 60-215 for an abuse of discretion. See *Adamson v. Bicknell*, 295 Kan. 879, 887, 287 P.3d 274 (2012). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022).

Once the time to amend a pleading as a matter of course has passed, a party may amend its pleading only with the opposing party's written consent, or the court's leave. K.S.A. 2023 Supp. 60-215(a)(2). In April 2022, the district court entered a case management order which complied with this statute. It set May 20, 2022, as the deadline for either party to move to amend its petition and responsive filing, and stated, "[a]bsent

agreement of the parties, no such motions will be granted after this date." Neither party moved to amend before that deadline, nor did the parties agree to a late amendment.

Zaragoza moved to amend her petition on February 3, 2023, after the County moved for summary judgment on January 17, 2023, long after the May 20, 2022 deadline for amending a pleading. She contends that she did so because she had just learned during a January 5, 2023 deposition that the yellow paint on the library's curb was not to designate a no-parking zone, but to help patrons distinguish between the curb and the parking lot at the library's entrance. She did not receive transcripts from that deposition until January 19, 2023. Yet Zaragoza fails to explain how the library's notice of this safety issue near its entrance put it on notice of the dangers of a sloped drain in the parking lot which caused her injuries.

"The court should freely give leave [to amend] when justice so requires." K.S.A. 2023 Supp. 60-215(a)(2). Yet Kansas courts have held that denying a motion to amend was proper when plaintiffs moved to amend only after the entry of summary judgment. See *Kinell v. N. W. Dible Co.*, 240 Kan. 439, 444, 731 P.2d 245 (1987); *Tullis*, 28 Kan. App. 2d at 351-52 (denying amendment to add claim of gross and wanton negligence after university filed motion for summary judgment based on recreational use immunity). We find no abuse of discretion in the district court's refusal to permit Zaragoza to add a claim of gross and wanton negligence to her petition, given the court's broad authority to manage its cases efficiently, Zaragoza's long notice that the County was asserting recreational use immunity, and her delay in moving to amend until after the County had moved for summary judgment.

But even assuming an abuse of discretion, any error is harmless. The district court considered all of Zaragoza's evidence of gross and wanton negligence offered in response to the County's motion for summary judgment, and found it failed to show gross and wanton negligence. We agree. So even had the district court granted Zaragoza's motion to

amend the petition, summary judgment would still have been proper based on the library's recreational immunity. See *In re L.M.B.*, 54 Kan. App. 2d 285, 309, 398 P.3d 207 (2017) (noting that, as for statutory harmless error, this court "must find that there is no reasonable probability that the error affected the outcome").

Affirmed.